UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

RICHMOND HOSPITALITY LLC,

                    Debtor.
------------------------------------------------------------x
RICHMOND HOSPITALITY LLC,

                 Plaintiff,

      -against-

SHAUGHNESSY CAPITAL LLC,

                 Defendant.
------------------------------------------------------------x

Chapter 11

Case No. 22-40507(JMM)

Adv. Pro. No. 24-01057 (JMM)

## AMENDED COMPLAINT

Richmond Hospitality LLC, the Chapter 11 Debtor and Debtor in Possession ("Plaintiff", "Debtor" or "Richmond"), by its counsel, LaMonica Herbst & Maniscalco, LLP, as and for its amended complaint against Shaughnessy Capital LLC ("Shaughnessy" or "Defendant"),[1] alleges as follows:

## PRELIMINARY STATEMENT

The evidence in this case will show that Defendant Shaughnessy concocted a scheme to default the Debtor and attempt to reap millions in unwarranted exorbitant default interest, internal fees and attorney's fees in connection with a construction project in Staten Island, New York.  The Debtor believes that money was even transferred, diverted and misused from the agent of Shaughnessy, KOW Building Consultants, Inc. ("KOW"), which the Debtor reserves the right to pursue.

---

[1] The Debtor reserves the right to assert individual claims against Bastian Rose, as more fully set forth herein, and KOW.

Shortly after a refinancing of the Debtor's development project in December, 2018, whereby Shaughnessy obtained additional collateral placing it in an over collateralized position in the millions of dollars, Shaughnessy positioned itself to create a fabricated default. Specifically, Shaughnessy ceased financing the Debtor's construction project at a time when the Debtor still had over $4,000,000(MM) in available funding and was at critical stages of development. By strangling the Debtor's cash flow with an immaterial and fabricated default, Shaughnessy caused substantial harm to the Debtor. Eventually, a State Supreme Court judge in Richmond County found that default to be improper and vacated the summary judgment order that Shaughnessy had previously obtained on default.[2]

The evidence will show that Shaughnessy created a fabricated non-monetary default of the Debtor's building loan agreement in order to trigger default interest and fees. Contrary to its representations to the State Court, at the time of the non-monetary default, Shaughnessy continued to accept payments from the Debtor each month and never advised the State Court that it was being paid even though Shaughnessy elected to accelerate the debt and sought to foreclose. This recourse building loan transaction was positioned for failure as soon as the refinancing was complete and, upon information and belief, Shaughnessy intended it to fail and never had the financial ability to fund the entire project. It went further; it continued to pursue claims against the Debtor in State Court by filing false pleadings that it knew were false or should have known were false. Its counsel had a duty and an obligation to check the record to determine whether his representations to the State Court were accurate. He did not. Instead, he allowed the State Court to be duped by false pretenses and misrepresentation which initially caused a precipitous decision to be rendered based on false and misleading information. Eventually, one Supreme Court of the State of New York

---

[2] Since then, Shaughnessy never started a new action or attempted to correct its misconduct and errors before the Richmond County Court.

(Ozzi, Wayne, J.S.C.) reversed the decision and vacated the underlying judgment. The other State Court judges are soon to follow. Shaughnessy never appealed that decision and accepted it as collateral estoppel.

To make matters worse, since the decision was rendered in March 2023, Shaughnessy has continued with a course of conduct and pattern of false representations in other jurisdictions arising out of the exact same facts and circumstances. Neither Shaughnessy or its counsel advised any of the other State Court judges or the Bankruptcy Court that the decision was reversed and the underlying judgment vacated, or corrected the false declarations filed.

But for the Debtor's efforts, tenacity in understanding the facts and chronology, Shaughnessy would have continued to proceed in this Court with false and misleading information. It is time for all of the relevant facts and circumstances be placed before this Court and for Shaughnessy to be put to its proof with sworn testimony as opposed to hiding behind false declarations.

## <u>NATURE OF THE PROCEEDING</u>

Plaintiff brings this action on behalf of the Debtor's bankruptcy estate in order to recover damages from the Defendant for, among other things, its breach of contract, fraud in the inducement, misrepresentation, false pretenses, breach of its implied duty of good faith and fair dealing, diminution of the value of the Debtor and its assets, equitable subordination of its claim, declaratory relief and the awarding of attorneys' fees and costs. The Debtor seeks monetary damages against Shaughnessy, and to equitably subordinate and disallow Shaughnessy's claim due to Shaughnessy's bad faith conduct in refusing to allow payment to a contractor, who then filed a mechanic's lien, and then Shaughnessy using that mechanic's lien as a pretext to claim a default and seek 27.75% default interest and other unwarranted fees. By these actions, it created a

massive avalanche of events on the Debtor which eventually led to a massive disruption in the Debtor's ability to develop its hotel.

Worse yet, Shaughnessy then used that pre-fabricated default, amazingly even knowing the mechanic's lien was thereafter satisfied, and caused different courts in different jurisdictions to adjudicate a default disguising it as a simple payment default. Equally appalling, the Debtor believes Shaughnessy's summary judgment motion was intentionally timed. Shaughnessy filed the motion five (5) days after the Trump Administration declared a national COVID pandemic emergency. By obtaining that default, Shaughnessy then used its position to control many of the occurrences of the Debtor's development plans and caused disruption at every step of the way. Eventually, at least one State Court recognized this bad faith conduct, read all of the pleadings, and matched up the timeline of events and came to the conclusion that it was not a simple payment default but rather a fabricated non-monetary default.

## JURISDICTION AND VENUE

1.      This action arises under the Debtor's pending Chapter 11 case.

2.      The United States Bankruptcy Court for the Eastern District of New York has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334 and Rules 3007, 6009 and 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

3.      The statutory predicates for the claims asserted herein include claims under common law, §§ 105(a) and 510(c) of title 11 of the United States Code ("Bankruptcy Code") and Bankruptcy Rules 3007, 3008, 6009 and 7001, *et seq*. and common law.

4.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(B), and (b)(2)(O).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      In accordance with Bankruptcy Rule 7008, Plaintiff consents to the entry of final Orders and judgment by this Court.

## PARTIES

7.      Plaintiff is Richmond Hospitality LLC, the Chapter 11 Debtor and Debtor in Possession and is a New York limited liability corporation having its principal place of business located in Brooklyn, New York.

8.      Defendant Shaughnessy Capital LLC is a Delaware limited liability company and, upon information and belief, licensed to do business in the State of New York.

9.      Defendant Shaughnessy is licensed to do business in the State of New York.

10.      Upon information and belief, defendant Shaughnessy is licensed as a banking institution and authorized to do business under New York State Department of Banking.

## FACTUAL ALLEGATIONS

**A.      The Bankruptcy Filing**

11.      On March 16, 2022 ("Filing Date"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York ("Court").

12.      By Order entered May 18, 2022, the case was converted to one under Chapter 11 of the Bankruptcy Code

13.      On September 1, 2022, the Debtor filed amendments to its Schedules, which included, among other things, additional creditors of the Debtor in this case, and its Statement of Financial Affairs.

14.     The Debtor remains in possession of its assets, is operating its business and managing its affairs as a Debtor and Debtor in Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

15.     The Debtor was created as a real estate hotel development owner and operator that was poised to develop an 80-room Best Western Vib Hotel in Staten Island ("Project") located at 100-110 South Bridge Street, Staten Island, New York ("Property").

**B.      Shaughnessy's Proof of Claim**

16.     On July 26, 2022, Shaughnessy filed Claim 3-1 against the Debtor in the amount of $8,771,303.28, which Shaughnessy asserts as a secured claim and which seeks interest at the rate of 27.75% ("Claim").

17.     The Debtor has disputed the Shaughnessy Claim and believes the Claim should be subordinated to the administrative creditors of the estate and unsecured creditors.

18.     Upon information and belief, according to the Debtor's books and records, the actual principal amount advanced by Shaughnessy to the Debtor was $4,181,787 (MM).

19.     According to the Debtor's books and records, Shaughnessy advanced the sum of $4,181,787 to the Debtor in connection with the Project ("Total Advances").

20.     Shaughnessy never advanced to the Debtor more than the Total Advances.

21.     Upon information and belief, the difference between the sworn and filed Claim of Shaughnessy and the Total Advances represents fees, chares, and interest.

22.     Despite the Total Advances, the Debtor paid Shaughnessy $1,385,919.16 in monthly payments for the years 2017 to March 2020.

23.     The Claim filed by Shaughnessy is not accurate.

24.     The Claim filed by Shaughnessy is inflated.

25.     Upon information and belief, Shaughnessy failed to maintain books and records to sustain its Claim.

**C.     The Pre-Petition Ground Lease and the Property**

26.     On December 19, 2014, the Debtor and RA Properties, LLC ("RA Properties") entered into a 99-year ground lease agreement with Richmond for the Property ("Ground Lease").

27.     The Ground Lease was made in connection with Richmond's financing with Defendant Shaughnessy to build and develop the Project at the Property.

28.     The Debtor was established for the purpose of developing the Project.

29.     The Debtor did not own the real property on which it was developing the hotel.

30.     Defendant Shaughnessy knew the Debtor did not own the Property.

31.     Defendant Shaughnessy knew the Debtor had a Ground Lease.

32.     Defendant Shaughnessy reviewed the Debtor's lease agreement with its landlord.

33.     At all times relevant, the Debtor paid the landlord its monthly rent.

**D.     The Pre-Petition Financing with Shaughnessy**

34.     Prior to obtaining financing from Shaughnessy, the Debtor started the Project and funded all development and construction from its members.

35.     The Debtor sought financing from Shaughnessy in 2017.

36.     Shaughnessy's initial financing to the Debtor occurred on January 27, 2017.

37.     At the time of the initial financing, Shaughnessy knew the Debtor had a Ground Lease.

38.     At the time of the initial financing, Shaughnessy knew the Debtor did not own the Property.

39.     Defendant Shaughnessy conducted due diligence of the Debtor's Project.

40.     During the initial financing, Shaughnessy represented to the Debtor that it had the financial wherewithal and ability to financially fund the Project.

41.     For the year 2017, Shaughnessy funded $3,930,280.28 to the Debtor pursuant to requisitions ("Initial Loan"). A copy of a schedule of advances made to the Debtor for the initial financing is annexed hereto as **Exhibit A**.

42.     In 2017, according to the Debtor's books and records, the Debtor paid Shaughnessy, through its principal, Bastian Rose, the sum of $195,125.65 in connection with the initial loan.[3]

43.     In 2017, The Debtor made all monthly payments to Shaughnessy on a timely basis.

44.     In 2018, according to the Debtor's books and records, the Debtor paid Shaughnessy, through its principal, Bastian Rose, the sum of $358,613.05 in connection with the initial loan.

45.     In 2018, The Debtor made all monthly payments to Shaughnessy on a timely basis.

46.     Thus, for the years 2017 through 2018, the Debtor paid Bastian Rose the total sum of $553,738.70 in connection with the Initial Loan. A copy of a schedule of payments made to Bastian Rose[4] is annexed hereto as **Exhibit B**.

47.     According to the Debtor, Bastian Rose directed the Debtor to make the monthly payments to him and not to Shaughnessy.

48.     At the time that Shaughnessy provided financing to the Debtor, the Debtor obtained additional financing for the Project from its members.

49.     In 2017, members of the Debtor funded $1,783,947(MM) for the Project ("2017 Member Contributions").

---

[3]     According to the Debtor, the President of Shaughnessy, Bastian Rose, required the monthly payments to be made to him personally as opposed to the Lender's bank account.

[4]     Payments made to Bastian Rose may be deemed fraudulent conveyances as he was never in privity with the Debtor and the Debtor never received value from Shaughnessy for those payments.

Case 1-24-01057-jmm    Doc 3    Filed 06/21/24    Entered 06/21/24 15:23:29

50.    In 2018, members of the Debtor funded $1,223,586(MM) for the Project ("2018 Member Contributions").

51.    In 2019, members of the Debtor funded $917,134 for the Project ("2019 Member Contributions").

52.    In 2020, members of the Debtor funded $327,022 for the Project ("2020 Member Contributions").

53.    In 2021, members of the Debtor funded $147,285 for the Project ("2021 Member Contributions").

54.    In 2022, members of the Debtor funded $43,060 for the Project ("2022 Member Contributions").

55.    In 2018, according to the Debtor, Shaughnessy encouraged, assisted and persuaded the Debtor to refinance the Initial Loan and obtain additional financing for the Project.

56.    In 2018, defendant Shaughnessy represented and warranted to the Debtor that it had the financial ability to fund the entire Project up to $10,000,000(MM).

57.    In 2018, defendant Shaughnessy encouraged the Debtor to refinance the Project.

58.    On December 7, 2018, in the middle of the Project, Plaintiff entered into a new promissory note agreement with Shaughnessy in the principal sum of $5,225,000(MM).

59.    On or about December 7, 2018, the Debtor and Shaughnessy executed a certain 2nd Building Loan Promissory Note B in the sum of $3,650,000(MM) representing a business loan to the Debtor.

60.    On or about December 7, 2018, the Debtor and Shaughnessy executed a certain 2nd Project Loan Promissory Note C in the sum of $450,000.00 representing a business loan to the Debtor.

50.    In 2018, members of the Debtor funded $1,223,586(MM) for the Project ("2018 Member Contributions").

51.    In 2019, members of the Debtor funded $917,134 for the Project ("2019 Member Contributions").

52.    In 2020, members of the Debtor funded $327,022 for the Project ("2020 Member Contributions").

53.    In 2021, members of the Debtor funded $147,285 for the Project ("2021 Member Contributions").

54.    In 2022, members of the Debtor funded $43,060 for the Project ("2022 Member Contributions").

55.    In 2018, according to the Debtor, Shaughnessy encouraged, assisted and persuaded the Debtor to refinance the Initial Loan and obtain additional financing for the Project.

56.    In 2018, defendant Shaughnessy represented and warranted to the Debtor that it had the financial ability to fund the entire Project up to $10,000,000(MM).

57.    In 2018, defendant Shaughnessy encouraged the Debtor to refinance the Project.

58.    On December 7, 2018, in the middle of the Project, Plaintiff entered into a new promissory note agreement with Shaughnessy in the principal sum of $5,225,000(MM).

59.    On or about December 7, 2018, the Debtor and Shaughnessy executed a certain 2nd Building Loan Promissory Note B in the sum of $3,650,000(MM) representing a business loan to the Debtor.

60.    On or about December 7, 2018, the Debtor and Shaughnessy executed a certain 2nd Project Loan Promissory Note C in the sum of $450,000.00 representing a business loan to the Debtor.

61.     Pursuant to the terms of the above referenced promissory notes and Mortgages, Shaughnessy agreed to a refinancing of the Initial Loan and providing the Debtor with the principal sum of $9,325,000.00 together with interest at the rates as provided therein in monthly installments ("LOC").

62.     The total loan amount that Shaughnessy committed to the Debtor under the LOC was $9,325,000.00.

63.     As part of the LOC, Shaughnessy required the Debtor to execute three (3) mortgages in connection with the three different financings.

64.     According to the Debtor, it was concerned that Shaughnessy would default the Debtor if the additional collateral was not provided.

65.      Shaughnessy recorded the mortgages of the LOC against the real property owned by R.A Properties, as the Debtor did not have a fee interest in the real estate and was only a Ground Lease holder.

66.     Shaughnessy's respective mortgages were filed one year later on December 27, 2019.

67.     At the time of the December 7, 2018 financing/LOC, the Debtor had an available line of credit with Shaughnessy of $5,394,719.72 under the Initial Loan, only used $3,930,280, and had additional borrowing ability of $1,464,439(MM).

68.     Defendant Shaughnessy persuaded the Debtor to get further into debt even though the Debtor had not used its Initial Loan and still had available capital of $1,464,439(MM).

69.     Upon information and belief, the purpose of Shaughnessy's refinancing demand for additional collateral was to earn additional and unnecessary and unwarranted fees for which the Debtor received no benefit ("Unwarranted Fees").

70.     In furtherance thereof, the Debtor proceeded with the process of obtaining additional financing and providing additional collateral to Shaughnessy.

**E.**     **The Members Pledge their Personal Residences as Additional Collateral**

71.     As part of the December Financing and to further secure the LOC, each of the six (6) members of the Debtor (Sebastian Faraone, Benedetto Intravia, Harshadbhai Patel, Hitesh Patel, Hansa Patel, and Jigar Patel (collectively, "Members") pledged personal residences to be used as additional collateral for the LOC ("Additional Collateral").

72.     According to the Debtor, Shaughnessy represented that it would never proceed against the Additional Collateral as the Project was lucrative and would be paid off without incident.

73.     According to the Debtor, the members placed their personal residences as Additional Collateral never thinking they would be forced to sell their homes, as Shaughnessy is currently seeking to do.

74.     The Members authorized mortgages for specific amounts on each of their real properties to secure the LOC.  A schedule of the mortgages placed against the residences of the Members is annexed hereto as **Exhibit C**.

75.     At the time of the December 7, 2018 financing, pursuant to the terms of the above promissory notes and Mortgages, Shaughnessy was over secured.

76.     Pursuant to the Loan Agreements, the Debtor was required to submit to Shaughnessy requisitions for payment of contractors for the construction of the Project as it progressed ("Requisition").

77.     According to the Debtor, Shaughnessy assumed the role of dispersing funds for the contractors as the Project progressed.

78.     Upon information and belief, once a Requisition received final approval from Shaughnessy, Shaughnessy transferred the amount of the Requisition to the Debtor, and the Debtor was then required to pay the approved amount to the contractor.

79.     At all times relevant, the Debtor believed that Shaughnessy would act in accordance with all laws and regulations and conduct itself in accordance with good faith and fair dealing.

80.     At all times relevant, the members of the Debtor provided additional financing when necessary for the Project.

**F.      Shaughnessy Caused a Mechanic's Lien to be Filed Against the Property**

81.     In or around November 2018, just prior to the December financing of the Initial Loan with Shaughnessy, which was refinanced into the LOC, the Debtor hired a general contractor, Precision Builders Group, Ltd ("Precision") to complete the Project.

82.     Shaughnessy knew the Debtor hired Precision.

83.     Shaughnessy never objected to Precision as the general contractor.

84.     Upon information and belief, defendant Shaughnessy conducted its own due diligence over Precision as a general contractor.

85.     In accordance with the loan agreements, Shaughnessy approved and paid for Precision's first two requisitions for payment.

86.     KOW was Shaughnessy's agent required to review the requisitions of the contractors on the Project.

87.     The Debtor objected to the use of KOW being the vendor to approve or not approve requisitions.

88.     The Debtor urged Shaughnessy not to use KOW.

89.     Upon information and belief, Shaughnessy had a close relationship with KOW.

90.     Shortly after the December Financing and Shaughnessy obtaining the Additional Collateral, Shaughnessy rejected and declined to pay Precision's third and fourth Requestions, which totaled approximately $483,951.06 ("Precision Requisitions").

91.     On March 29, 2019, since Shaughnessy failed to pay the Precision Requisitions, Precision filed a mechanic's lien against the Project in the amount of $483,951.04 ("Precision Mechanics Lien").

92.     On April 4, 2019, according to Shaughnessy, it served a notice of default on the Debtor due to the filing of the Precision Mechanics Lien and an opportunity to cure the default ("Default Notice Cure").

93.     According to filings in State Court, the Default Notice Cure identified that the Debtor was in default due to the filing of the Precision Mechanic Lien. A copy of the Default Cure Notice is annexed hereto as **Exhibit D**.

94.     At the time of the Default Notice Cure, Shaughnessy was adequately protected in connection with the Project by millions of dollars.

95.     At the time of the Default Notice Cure, Shaughnessy had funded a mere $251,507.18 of the LOC for the Debtor, which occurred on January 17, 2019, which money was used for Precision's initial requisitions.

96.     According to the Debtor, there was no basis to reject the Precision Requisitions.

97.     According to the Debtor, Shaughnessy never provided an objective basis for rejecting the Shaughnessy requisitions.

98.     According to the Debtor, it objected to the Default Cure Notice with Shaughnessy.

99.     According to the Debtor, Shaughnessy continued to ignore the Debtor's objection to the Default Cure Notice.

100.    Just four months after Shaughnessy obtained the Additional Collateral and the signing of the LOC documents, it caused a collapse of the entire Project over a $483,951.06 requisition.

101.    At the time that the Precision Mechanics Lien was filed against the Property, according to Shaughnessy, it was owed $5,476,507.18[5] on its LOC, but the Debtor still had at least $3,873,492(MM) in available credit under the LOC for use on the Project.

102.    When the Precision Mechanics Lien was filed against the Project, the Debtor urged Shaughnessy to permit payment of Precision Requisitions.

103.    When the Precision Mechanics Lien was filed against the Project, the Debtor communicated with Shaughnessy and continued to request that the Requisitions be paid.

104.    At all times relevant, the Debtor assumed Shaughnessy would be paying the Precision Requisitions.

105.    Upon information and belief, Shaughnessy never provided any sound business justification for not paying the Precision Requisitions.

106.    Despite the Debtor's urging, Shaughnessy continued to refuse to pay for Precision Requisitions.

107.    At all times relevant, the Debtor believed Shaughnessy would pay the Precision Requisitions and the Precision Mechanics Lien would be vacated.

108.    On May 17, 2019, according to Shaughnessy, it served a final default since it alleges the Debtor did not cure the Default Cure Notice. ("Final Non-Monetary Default"). A copy of the Final Non-Monetary Default is annexed hereto as **Exhibit E**.

---

[5]    This is calculated by taking the new LOC loan of $5,225,000 and adding the only funded requisition of $251,507.18

109.    The Final Non-Monetary Default acknowledged "while it is our understanding that Borrower is contesting the amounts and validity of the mechanic's lien, the mechanic's lien remains of record … and the proper remains at risk of potential forfeiture or loss. See **Exhibit E**.

110.    Believing the Precision Mechanics Lien would be resolved, the Debtor continued to make its monthly payments directly to Bastian Rose as he requested, the president of Shaughnessy.[6]

111.    For the period January, 2019 through March 2020, the Debtor made payments to Bastian Rose of $832,179.46.  A Schedule of payments made to Bastian Rose from the December Financing LOC is annexed hereto as **Exhibit F**.

112.    At all times relevant, Shaughnessy knew the Debtor contested the Precision Mechanics Lien.

113.    Bastian Rose continued to accept payments each month from Shaughnessy.

114.    From the Initial Loan to the last payment made in March, 2020, the Debtor made each and every payment to Shaughnessy.

115.    From the Initial Loan to the last payment made in March, 2020, the Debtor made payments directly to Bastian Rose, at his specific direction and request, in the total amount of $1,385,919.16.  A copy of the Schedule of all payments made to Bastian Rose is annexed hereto as **Exhibit G**.

G.    **Shaughnessy Uses the Mechanic's Lien to Create a Fabricated Default**

116.    As a result of the fabricated Precision default, beginning in or about April, 2019, Shaughnessy started charging the Debtor default interest on the LOC at the rate of 27.75% ("Default Interest").

---

[6]    As stated earlier, the President of Shaughnessy required the Debtor make the payments to him personally as opposed to Shaughnessy.

117.    According to the Debtor, and the facts set forth herein, the Default Interest was done to eventually foreclose against the Additional Collateral and take the homes of the principals.

118.    During the entire Precision Mechanics Lien dispute, Bastian Rose was accepting money from the Debtor each and every month.

119.    According to sworn affidavits of Bastian Rose in the various state courts, he never alerted the State Court that he was accepting monthly payments from the Debtor to himself personally.

**H.    Shaughnessy Sues the Debtor in State Court Based on the Mechanic's Lien**

120.    On November 18, 2019, Shaughnessy commenced an action against the Debtor and others in the Supreme Court of the State of New York, County of Richmond ("State Court") seeking to accelerate the amount due under the LOC based on the Precision Mechanics Lien under Index No. 152641/2019 ("State Court Action").

121.    The State Court Action sought to accelerate the LOC due to the Precision Mechanics Lien.

122.    The State Court Action sought to accelerate the LOC due to an alleged non-monetary default.

123.    The non-monetary default was immaterial to the Project and did not prejudice Shaughnessy or place it in a precarious position.

124.    Shaughnessy was adequately protected even with the Precision Mechanics Lien filed against the Project.

125.    According to sworn filings in the State Court, Shaughnessy alleged that the Debtor defaulted with respect to the obligations under the aforesaid promissory notes and Mortgages by failing to comply with Sections 2.2(c), 2.4 and 7.1(m) of the Mortgages, in that the Debtor allowed

a lien or encumbrance to be filed and remain against the property subject to the Mortgage, and the Debtor failed to cure the default thereunder despite due demand.

126.     According to sworn filings in the State Court, Shaughnessy alleged "By reason of said default, Shaughnessy has duly elected and does hereby elect to declare the entire balance of the principal sum secured by the Mortgages immediately due and payable. A copy of the complaint is annexed hereto as **<u>Exhibit H</u>**.

127.     In three simple paragraphs, Shaughnessy boldly claimed a default without any specific detailed information and simplistically sought to accelerate its debt in the underlying Notes.

128.     At the time, importantly, the Debtor did not owe Shaughnessy $9,325,000(MM) as alleged in the State Court Action.

129.     Amazingly, Shaughnessy swore to the State Court that:

> "Defendants are duly indebted to Plaintiff under the terms of the aforesaid promissory notes and Mortgages, in the principal sum of 9,325,000.00, together with interest, escrow due if any, other sums set forth therein, and sums advanced for the protection of the subject premises.   Interest continues to accrue at the interest rates set forth in the aforesaid promissory notes and Mortgages."

130.     The sworn filing in the State Court Action in para 37 of the Complaint is false. <u>See Exhibit G</u>.

131.     Shaughnessy knew the statement at paragraph 37 was false when made.

132.     At all times relevant, Shaughnessy knew the statements at paragraph 37 of the complaint in the State Court Action were false.

133.     Shaughnessy has yet to correct the State Court Action and the false statements made to that Court.

134.    At the time of Shaughnessy's filings and sworn declarations, taking into consideration all fees and charges, which were exorbitant, the Debtor was only advanced the total sum of $4,181,787(MM).

## I.    Shaughnessy Capital LLC was Clever in the Way it Drafted the Complaint

135.    The representations to the State Court seeking a judgment against the Debtor were false on their face; the Debtor was not indebted to Plaintiff for $9,325,000.00(MM).

136.    The State Court complaint was not a garden variety payment default foreclosure action, but rather a non-monetary default under the loan documents.

137.    Instead of definitively advising the State Court that what was before the Court was a non-monetary default, which the Debtor always contested, Shaughnessy asserted a violation of certain sections of the loan documents - Sections 2.2(c), 2.4 and 7.1(m) of the Mortgages, but never attached the actual documents to the Complaint or alerted the State Court that this was not a traditional money loaned and received default.[7]

138.    Shaughnessy's efforts were intentional and concerted as Shaughnessy had an obligation, but did not explain to the State Court that the matter before it concerned a non-monetary default; instead, it simplistically buried in the pleadings the default language referring to sections of the mortgage making the State Court belief this was a garden variety payment default.

139.    The sections which formed the basis for Shaughnessy's acceleration of the LOC were the following:

(a)    Section 2.2(c) provides that "Borrower shall pay when due the claims of all persons supplying labor or materials to or in connection with the Property."

(b)    Section 2.2(d) of the Mortgage provides, *inter alia*, that "Borrower shall promptly discharge any lien, encumbrance, or other charge, whether

---

[7]    Indeed, Plaintiff also never explained that the loan structure was a line of credit whereby the Richmond Defendant was liable for $5.2MM, not $9.3MM.

superior or inferior to this Instrument which may be claimed against the Property…."

(c)     Section 7.1(m) of the Mortgages provides for default where the "default, beyond any applicable grace or cure period, occurs in the performance of any obligation of Borrower under the Ground Lease."

140.    While Shaughnessy alleged the Debtor was in violation of Note A, Note B and Notice C, that was false.

141.    Upon information and belief, the Debtor never used any money under Note B.

142.    Upon information and belief, the Debtor never used any money under Note C.

**J.      The Mechanic's Lien Gets Removed**

143.    On January 14, 2020, according to the Debtor, Precision sent an email to Shaughnessy confirming a resolution of the Precision Mechanics Lien.

144.    On January 15, 2020, Precision executed a Satisfaction and Release of Mechanic's Lien. A copy of the Precision Satisfaction is annexed hereto as **Exhibit I**.

145.    According to the Debtor, it had provided notice to Shaughnessy that the Precision Mechanics Lien was satisfied and resolved.

146.    On January 28, 2020, Precision filed a Stipulation of Discontinuance dismissing the Mechanic's Lien Action as being resolved and satisfied. See State Court Action, Index No. 151049/2019, NYSCEF Doc. No. 7.

147.    Upon information and belief, Shaughnessy knew the Precision Mechanics Lien was satisfied.

**K.      Shaughnessy Fraudulently Sought Summary Judgment Even Though the Mechanic's Lien was Removed**

148.    On January 28, 2020, Shaughnessy's complaint in the State Court Action should have been dismissed because the Precision Mechanics Lien had been cured and satisfied.

149.     On March 13, 2020, the Trump Administration declared a nationwide emergency.

150.     Shaughnessy knew the Trump Administration declared a nationwide emergency.

151.     On March 15, 2020, according to the Center for Disease Control, states began to implement shutdowns in order to prevent the spread of COVID-19; the New York City public school system —the largest school system in the U.S., with 1.1 million students— shut down, and the mayor called for restaurants and bars to close.

152.     On March 20, 2020, with complete knowledge that the Precision Mechanics Lien was satisfied, and days after the COVID-19 forced shutdowns, Shaughnessy filed a motion for summary judgment in the State Court Action based on the Precision Mechanics Lien non-monetary default ("Shaughnessy MSJ").

153.     The Shaughnessy's MSJ was filed 52 days after the Precision Mechanics Lien Action was dismissed.

154.     Upon information and belief, Shaughnessy filed the Shaughnessy MSJ at a time when the entire world was concerned about the COVID-19 vaccine, lockdowns, health, safety and welfare of life.

155.     Based on the events set forth herein, upon information and belief, Shaughnessy knew that attention to the Shaughnessy MSJ would be nominal and could be missed.

156.     Upon information and belief, defendant Shaughnessy intended to obtain a default on its Shaughnessy MSJ and then use that default to destroy the Debtor's Project, collect exorbitant fees and sell all of the homes of the members of the Debtor.

157.     At all times relevant, Shaughnessy engaged in a pattern of systematic fraud and had unclean hands.

158.     Upon information and belief, Shaughnessy engaged in a pattern of conduct which is fraudulent, not only on the State Court but also on the Debtor and this Court.

159.     Shaughnessy knew or should have known that the Precision Mechanics Lien was satisfied.

160.     At the time of the Shaughnessy MSJ, there was no default of a non-monetary obligation.

161.     Upon information and belief, Shaughnessy engaged in this filing to cause a collapse of the Project and engage in a loan to own scheme.

162.     At all times relevant, Shaughnessy set up the LOC as a loan to own scheme.

163.     At all times relevant, Shaughnessy set up the LOC to fail and had every intention to reject a requisition; in fact, it rejected the Precision one less than four (4) months after the LOC.

164.     At all times relevant, Shaughnessy desired that the Debtor default on the Project.

165.     At all times relevant, upon information and belief, Shaughnessy did not have the required capital reserved for the LOC under NYS banking rules and regulations.

166.     At all times relevant, defendant Shaughnessy did not have the financial ability to fund the Requisitions as required by the Debtor.

167.     At all times relevant, based upon the course of conduct, defendant Shaughnessy knew it did not have the financial ability to fund $9,325,000(MM) for the Project.

168.     At the time of the filing of the Shaughnessy MSJ, Shaughnessy knew or should have known that no one would be paying close attention to the details of Shaughnessy's pleadings and that Shaughnessy would reap the benefit of its exorbitant interest charges and fabricated default.

169.    Shaughnessy's MSJ never advised the State Court that Precision had been paid and that the Precision Mechanics Lien had been removed.

170.    On May 10, 2021, the State Court granted Shaughnessy's MSJ on default.

**L.    The Debtor Sought A Vacatur of the Fraudulent Judgment and Eventually Prevailed**

171.    On July 14, 2021, prior to the current filing, Richmond filed a motion in the State Court Action seeking to vacate the summary judgment order ("Vacate Motion").

172.    Still knowing the Precision Mechanics Lien was satisfied, Shaughnessy opposed the Debtor's Vacate Motion and cross-moved to obtain a final judgment in the State Court Action against the Debtor based on the Precision Mechanics Lien default.

173.    The Vacate Motion initially asserted law office failure to vacate the default that Shaughnessy obtained on the Shaunessy MSJ.

174.    On October 25, 2022, the Debtor, through new counsel, sought again to vacate the fraudulent Shaughnessy judgment obtained in the State Court Action.

175.    On January 31, 2023, Shaughnessy again opposed the Debtor's motion to vacate and filed a cross-motion seeking sanctions against the Debtor.

176.    In hearings before this Court, Shaughnessy asserted it obtained a final judgment and there was nothing for this Court to adjudicate.

177.    On March 24, 2023, the State Court granted the Debtor's motion to vacate and denied Shaughnessy's cross-motion.  A copy of the Decision is annexed hereto as **Exhibit J**.

178.    According to the State Court Decision, the State Court stated that Shaughnessy had not provided the State Court with legal authority to support Shaughnessy's position that a non-monetary default caused by a lender's allegedly unreasonable failure to advance funds, which was later cured, does not also cure the non-monetary default.

179.    Shaughnessy never appealed the Decision.

180.    Shaughnessy amended its claim in this case.

181.    Shaughnessy never amended any pleadings or prior sworn statements before this Court about the vacatur of its judgment.

182.    Even with the Decision, Shaughnessy never amended any of its pleadings or corrected any of its sworn affidavits to the various other state courts, or in the Bankruptcy Court, that the non-monetary default was cured prior to the filing of the Shaughnessy MSJ.

**M.    <u>Shaughnessy has Denied all requests to be paid on the Additional Collateral</u>**

183.    In order to pay the Additional Collateral mortgages that were placed on the personal residences, the members have offered to refinance those properties and pay off the respective mortgages on the properties.

184.    Despite the members' requests to pay Shaughnessy for a release of lien of their respective mortgages, Shaughnessy has refused to provide a release of lien.

185.    Shaughnessy will not provide a payoff of the mortgages on the respective Additional Collateral mortgages.

186.    According to Shaughnessy, it believes that all of Additional Collateral must be sold, the members must vacate the real property, and Shaughnessy must receive all proceeds and all sales of the Additional Collateral must be accomplished at the same time.

187.    Shaughnessy's requests have not only been unreasonable but impossible.

188.    Shaughnessy's conduct is not only fraudulent but reprehensible; Shaughnessy's Claim, whatever the Court determines it to be, which should not exceed the principal advanced to the Debtor, should be equitably subordinated to the administrative creditors of this estate and all unsecured creditors.

189.    Shaughnessy has engaged in consistent bad faith conduct with respect to the LOC, the manner in which it was obtained and repaying the LOC.

190.    According to the Debtor, Shaughnessy engaged in false pretenses, misrepresentation and inequitable conduct in the manner in which it refinanced the Project, put in place the LOC, obtained the Additional Collateral and then defaulted the Debtor.

**FIRST CLAIM FOR RELIEF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

191.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs and incorporates them by reference as though fully set forth therein.

192.    The Debtor had a justifiable understanding and expectation that Shaughnessy would not act unfairly, arbitrarily or irrationally in declaring a default under the Loan.

193.    Shaughnessy's conduct had the effect of destroying or injuring the right of the Debtor to receive the benefit of the Loan and the Project.

194.    By virtue of the foregoing, Plaintiff is entitled to judgment against Shaughnessy for return of all fees and charges paid to Shaughnessy in an amount to be determined at trial but in no event less than $485,000, together with other monetary damages in an amount to be determined at trial, but in no event less than the Debtor's legal fees in connection with the prosecution of claims with Shaughnessy, and punitive damages in the amount of $500,000

**SECOND CLAIM FOR RELIEF**
**(Equitable Subordination)**

195.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs and incorporates them by reference as though fully set forth therein.

196.    At all relevant times, Shaughnessy knew that the Precision Mechanics Lien was on the Property due to Shaughnessy's failure to pay it.

24

197.    At all relevant times, Shaughnessy knew that the Debtor was working to resolve the dispute surrounding the Precision Mechanics Lien.

198.    At all relevant times, Shaughnessy knew the Debtor objected to and contested the Precision Mechanics Lien.

199.    Shaughnessy engaged in inequitable conduct by defaulting the Debtor based on the Precision Mechanics Lien.

200.    Shaughnessy engaged in inequitable conduct in continuing to prosecute the State Court Action after the Precision Mechanics Lien was satisfied.

201.    At all times relevant, defendant Shaughnessy engaged in a course of conduct contrary to good faith and fair dealing.

202.    At all times relevant, defendant Shaughnessy knew the Precision Mechanics Lien was satisfied prior to the filing of its Shaughnessy MSJ.

203.    At all times relevant, Shaughnessy knew that its filings, pleadings and declarations before the various courts were false and misleading.

204.    Shaughnessy engaged in inequitable conduct by not advising the Bankruptcy Court its judgment as vacated.

205.    The equities in this case dictate that the amounts the Debtor allegedly owes to Shaughnessy pursuant to the Loan should be subordinated to the claims of all of the Debtor's other creditors under 11 U.S.C. § 510(c).

206.    Such equitable subordination is necessary because Shaughnessy's inequitable conduct provided Shaughnessy with an unfair advantage and resulted in an injury to the Debtor's creditors.

207.	Equitable subordination of Shaughnessy's claim is consistent with the Bankruptcy Code.

208.	As a result of such inequitable conduct, the Debtor incurred additional and unnecessary legal fees of at least $250,000.

209.	By reason of the foregoing, Shaughnessy's claim against the Debtor should be equitably subordinated to the claims of all administrative and general unsecured creditors pursuant to § 510(c) of the Bankruptcy Code.

## THIRD CLAIM FOR RELIEF
### (Amended Objection to Claim)[8]

210.	Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs and incorporates them by reference as though fully set forth therein.

211.	As set forth above, Shaughnessy's Claim is based on Shaughnessy's improper conduct which caused harm to the Debtor and the Debtor's estate.

212.	The accrual of 27.75% interest, late fees, and attorneys' fees based on the Precision Mechanics Lien default was the result of Shaughnessy's own bad acts and should not be treated as a valid claim against the Debtor.

213.	By reason of the foregoing, the Debtor objects to the amount of the Shaughnessy Claim.

214.	Aside from the principal advanced to the Debtor in the total amount of $4,181,787(MM), Shaughnessy is not entitled to anything further, and must return to the Debtor's estate all sums in received in excess thereof.

---

[8]	The third claim for relief amends the Debtor's previously filed Objection to Shaughnessy's Claim (Dkt. No. 113).

215.    By reason of the foregoing, the Debtor seeks the entry of an order awarding Shaughnessy to the total sum of $4,181,787 (MM), which amount should be deemed an unsecured claim and subordinated to all creditors of the Debtor's estate.

### FOURTH CLAIM FOR RELIEF
**(Misrepresentation)**

216.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs and incorporates them by reference as though fully set forth therein.

217.    At all times relevant, as more fully set forth above, defendant Shaughnessy has made misrepresentations or omissions of material fact(s) which were false and known to be false by defendant Shaughnessy.

218.    At all times relevant, the representations made by defendant Shaughnessy were done for the purpose of inducing the Debtor to rely upon it.

219.    The Debtor justifiably relied on the material misrepresentations or omissions of defendant Shaughnessy.

220.    The Debtor relied on the numerous representations made by Shaughnessy and has been damaged in an amount to be determined at trial, but in no event believed to be less than all of the exorbitant fees, charges, internal charges, points, fabricated default, defense of the various litigations to its counsel, which amount is believed to be $1,500,000(MM).

221.    By reason of the foregoing, the Debtor has been damaged and requests the entry of an order awarding consequential damages and fees incurred as a result thereof.

## FIFTH CLAIM FOR RELIEF
### (Fraud on the Court)

222.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs and incorporates them by reference as though fully set forth therein.

223.    As more fully set forth herein, defendant Shaughnessy engaged in a fraud on the Supreme Court of the State of New York.

224.    Defendant Shaughnessy had an obligation to notify the State Court that the Precision Mechanics Lien had been satisfied.

225.    Defendant Shaughnessy had an obligation to notify the Bankruptcy Court that the Precision Mechanics Lien had been satisfied.

226.    Defendant Shaughnessy knew or should have known the Precision Mechanics Lien had been satisfied.

227.    As a result of the misrepresentations, the Debtor incurred substantial legal fees and Shaughnessy has improperly asserted default interest, fees, and costs in connection with their fraud.

228.    Upon information and belief, Defendant Shaughnessy had knowledge of the false and misleading representations made in connection with its request for summary judgment.

229.    A simple search of the court record would have revealed that the Precision Mechanics Lien was satisfied.

230.    Even after the Decision, Defendant Shaughnessy still never corrected any of its prior pleadings in other jurisdictions based on the same facts and circumstances.

231.    Defendant Shaughnessy filed actions in different jurisdictions to create as much confusion as possible and obtain inconsistent results.

232.     Defendant Shaughnessy derived a substantial benefit as it placed itself in a very bold position in the Bankruptcy Court and the different jurisdictions in State Court.

233.     As more fully set forth in detail above, defendant Shaughnessy engaged in a fraud on the Court, which fraud was uncovered by the Supreme Court of the State of New York, Richmond County (Wayne, Ozzi, J.S.C.).[9]

234.     By reason of the foregoing, the Debtor requests the entry of an order denying any legal fees to defendant Shaughnessy, awarding legal fees in favor of the Debtor in an amount to be determined at trial but in no event believed to be less than $500,000.

---

[9]     "An attorney's knowledge or sponsorship of misdeeds by their clients, including a client's nondisclosure of material information when appearing before a court, may be grounds for alleging fraud on the court against the attorney." Grubin v. Rattet (In re Food Mgmt. Group, LLC), 380 B.R. 677, 714 (Bankr. S.D.N.Y. 2008).

**WHEREFORE**, the Plaintiff demands judgment on its claims for relief against the Shaughnessy as follows:

(i)      On the First Claim for Relief, awarding damages against Shaughnessy in an amount to be determined at trial;

(ii)     On the Second Claim for Relief, equitably subordinating Shaughnessy's Claim to the claims of all general unsecured creditors pursuant to § 510(c) of the Bankruptcy Code;

(iii)    On the Third Claim for Relief, disallowing Shaughnessy's Claim or allowing it as an unsecured claim in such reduced amount as may be determined by this Court;

(iv)     On the Fourth Claim for Relief, awarding consequential damages and fees incurred as a result thereof;

(v)      On the Fifth Claim for Relief, denying any legal fees to defendant Shaughnessy, awarding legal fees in favor of the Debtor in an amount to be determined at trial but in no event believed to be less than $500,000; and

(vi)     Granting such other and further relief in favor of the Debtor and against Shaughnessy as the Court may deem just, equitable and proper.

Dated: June 21, 2024
       Wantagh, New York

                                    **LaMONICA HERBST & MANISCALCO, LLP**
                                    *Counsel to Plaintiff Richmond Hospitality LLC*

                          By:       s/ Joseph S. Maniscalco
                                    Joseph S. Maniscalco, Esq.
                                    Lon J. Seidman, Esq.
                                    Partners of the Firm
                                    3305 Jerusalem Avenue, Suite 201
                                    Wantagh, New York 11793
                                    Tel. (516) 826-6500

## **VERIFICATION**

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NASSAU      )


Sebastiano Faraone, as Managing Member of Richmond Hospitality LLC, being duly sworn, deposes and says:

I have read the foregoing Amended Complaint and know the contents thereof. The same is true to my knowledge, except to those matters which are alleged on information and belief, and as to those matters, I believe them to be true.


_Sebastiano Faraone_
Sebastiano Faraone, Managing Member


Sworn before me this 19th day
of June 2024

_____
Notary Public

**JOSEPH S. MANISCALCO**
Notary Public-State of New York
No. 02MA5063826
Qualified in Nassau County
My Commission Expires 7/29/26

31