# EXHIBIT J

At an IAS Part 23 of the Supreme Court
of the State of New York, held in and for
the County of Richmond at 26 Central
Avenue, Staten Island, New York 10301
on the 24th day of March 2023

---------------------------------------X

SHAUGHNESSY CAPITAL, LLC,
Plaintiff,                                    INDEX NO. 152641/2019

-Against -                                    **Decision and Order**

RICHMOND HOSPITALITY, LLC; 100-110
SOUTH BRIDGE, LLC; R.A. PROPERTIES, LLC;
PRECISION BUILDERS GROUP, LTD; JOHN
MICHAEL ELECTRIC CONTRACTING CORP.;
ALL CITY GLASS FABRICATIONS CORP.;
BENEDETTO INTRA VIA a/k/a BENEDETTO
INTRAVAIA; KBA REALTY,LLC;
HARSHADBHAI PATEL a/k/a HARSHAD
PATEL; NIICETABEN PATEL; HITESH PATEL
a/k/a HITESHKUMAR PATEL; SEBASTIANO
FARAONE; SANJAY PATEL; HANSA PATEL;
JIGAR PATEL,
Defendants.

---------------------------------------X

**Hon. Wayne M. Ozzi, J.S.C.**

The following papers were read and considered in this motion which was fully submitted on February 24, 2023.

NYSCEF Doc # 41 - #155

This matter is before the Court on the motion of Defendant, Richmond Hospitality (hereinafter "Defendant"), seeking an order vacating its May 10, 2021 and November 3, 2021

Orders in this matter pursuant to CPLR §5015 (Motion Seq. No. 6), as well as on the cross-motion (Motion Seq. No. 7) of Plaintiff, Shaughnessy Capital, LLC, (hereinafter "Plaintiff") for sanctions. The November 3, 2021 Order denied Defendant's motion to vacate the Court's Order of May 10, 2021 (Motion Seq No. 2), which granted summary judgment in favor of the Plaintiff on default (Motion Seq. No 1). It also granted Plaintiff's cross-motion to confirm the referee report and for entry of a money judgment in the amount of $7,824,227.24. For the reasons set out below, the Court now grants the Defendant's motion to vacate these orders based on excusable failure, new evidence regarding the case, and the submission of what appears to be inadvertently misleading information on the summary judgment motion, all of which are further described herein. The Court hereby denies Plaintiff's cross-motion for sanctions. (Motion Seq. No. 7).

The decision to grant Defendant's motion means that the Court's prior Orders entering summary judgment, confirming the referee report and entering a money judgment must be vacated as well.

## Background

This case involves the default of commercial lending mortgages issued in relation to the construction of a new hotel. The terms of the loans included a process for release of funds, wherein Defendant would requisition funds for its project and the lender would advance those funds if, after review, the requisition was approved. At some point, after the first general contractor on the project was terminated, allegedly for malfeasance, Precision Builders Group Ltd (hereinafter "Precision Builders") was named general contractor. Defendant/Movant and Plaintiff agree that Plaintiff, the lender, declined to approve a requisition of this general contractor. As a result, Precision Builders brought suit against Defendant for payment and filed

2

a mechanic's lien based on this non-payment. The lien formed a basis for the foreclosure action, in that it accelerated the entire amount due and owing. The mortgages at issue provide for acceleration of the debt when the borrower (defendant) fails to pay the claims of persons supplying labor or materials to the construction project, and the borrower fails to secure a discharge of any liens or encumbrances filed against the subject property. Defendant characterizes this as a "non-monetary default."

The Court granted Plaintiff's Motion for Summary Judgment on default in this case on May 10, 2021. Plaintiff's counsel in his opposition to the earlier motion to vacate indicated that, on September 9, 2020, Defendant's original counsel reached out to "my firm and requested an adjournment to October 22, 2020, for the purpose of preparing and filing opposition to the pending motion. We consented to the defense counsel's request, and, on the same day, defense counsel prepared a Stipulation to effectuate the adjournment, which was duly executed by all counsel." (NYSCEF Doc. No. 80 ¶ 12).

The stipulation provided that the Defendants were required to submit opposition to the motion on or before October 15, 2020. (NYSCEF Doc. No. 84). No opposition was forthcoming. The motion was ultimately deemed submitted on May 6, 2021, apparently due to pandemic related special court procedures and delays. (NYSCEF Doc. No. 67). However, Defendants never filed any opposition papers.

### Discussion

In general, to vacate a default judgment pursuant to C.P.L.R. 5015(a)(1), the moving party must establish both a reasonable excuse and a meritorious defense to the underlying action. *(Santiago v. N.Y. City Health & Hosps. Corp.*, 780 N.Y.S.2d 764, 766 (2d Dept. 2004)). There is, though, a strong countervailing public policy in favor of resolving cases on the merits. Where,

for example, a party lacks intent to abandon the action, its default is not deemed willful, and if it will not unduly prejudice the opposing party, courts have determined that a litigants should not be deprived of their day in court. *(See Henry v. Kuveke, 9 A.D.3d 476, 479 (2d Dept. 2004))*.

Under CPLR 5015(a), a court is empowered to vacate a default judgment for several reasons, including excusable neglect; newly discovered evidence; fraud, misrepresentation or other misconduct by an adverse party; lack of jurisdiction. Case law makes clear that "these categories represent a codification of the principal grounds upon which courts have traditionally vacated default judgments as part of their "inherent discretionary power." *(Woodson v. Mendon Leasing Corp., 100 N.Y.2d 62, 68 (2003)*. For this reason, *Woodson* explains, CPLR 5015(a) does not provide an exhaustive list as to when a default judgment may be vacated. Instead, a court may vacate its own judgment for sufficient reason and in the interest of substantial justice. *(Ibid)*. This power recognizes the court's strong preference to decide cases on their merits, and may be used to relieve a party "from judgments taken through mistake, inadvertence, surprise or excusable neglect." *(Wade v. Village of Whitehall, 46 A.D.3d 1302, 1303 (3d Dept. 2007))*.

In denying the Defendant's previous motion to vacate, this Court found that Defendant had not provided a sufficiently detailed explanation of the alleged law office failure on which it relied. "Where a delay or default results from law office failure, a court may exercise its discretion to excuse that delay or default." *(Ferraro Foods, Inc. v. Guyon, Inc., 85 N.Y.S.3d 479, 482 (2d Dept. 2018))*. However, "bare allegations of incompetence on the part of prior counsel" are insufficient to establish law office failure. *(Torres v Rely On Us, Inc, 165 AD 3d 731, 733 (2d Dept. 2018))*. However, Defendant's most recent filing includes additional information in support of vacating the orders, including additional allegations regarding the financing and the default; additional facts regarding the failure to oppose the motion, including specifically that a

4

malpractice case, now dismissed, had been filed against original counsel; and additional documentation that the lien that formed the basis of the default were cured prior to Plaintiff moving for summary judgment. Defendant now also argues that the orders should be vacated due to newly discovered evidence and misleading information in the summary judgment motion papers.

Soon after the unopposed summary judgment motion was granted against Defendant, Defendant's then counsel informed Defendant, through its manager, Sebastiano Faraone, that the attorney assigned to the file was no longer employed by the firm and identified the attorney who would now be handling the matter. (NYSCEF Doc. No. 71, Sebastiano Faraone Affidavit in Support of (First) Motion to Vacate ¶40). Defendant claims that it received no communication from the successor attorney assigned to the matter. Defendant also claimed that it had no notice that the summary judgment was not opposed until it received a copy of the judgment. As a result of the judgment, Defendant retained new counsel on the matter. (NYSCEF Doc. No. 71, Faraone Affidavit in Support of (First) Motion to Vacate ¶41-43). On July 14, 2021, about two months after the grant of summary judgment on default, Defendant, through new counsel, filed an emergency Order to Show Cause seeking to vacate the November 2021 order granting summary judgment. (NYSCEF Doc. No. 71). Defendant has made clear throughout these proceedings that it in no way intended to default; that did not neglect to oppose the foreclosure; that it did not know the motion for summary judgment was unopposed until receiving a copy of the judgment, and thus was surprised by the judgment; and acted swiftly to address the situation once it learned of the judgment.

After the Defendant's first motion to vacate was denied on February 14, 2022, Defendant initiated a malpractice suit against the original law firm it retained for failing to oppose the

5

motion for summary judgment. The Court notes that on December 20, 2022, the malpractice complaint was dismissed by Honorable Ronald Castorina Jr., JSC, on motion; Defendant has filed a notice of appeal. (Index No. 150277/2022). Apparently as a result of the malpractice allegation, on March 15, 2022, the original firm filed an order to show cause for leave to withdraw as counsel to Defendant in this action. (NYSCEF Doc. No. 113-118).

This Court denied the first motion to vacate, relying on the fact that the defendant failed to provide detailed information on the failure of prior counsel to file opposition. While the case law does speak to a requirement that a detailed, specific explanation of law office failure be provided, in this case, where a malpractice action was filed soon after the motion to vacate, it should also be acknowledged that there likely were practical challenges to Defendant obtaining such detailed information. Further, in light of the newly presented documentation that Defendant's original counsel signed the stipulation that ultimately led to the lien release (NYSCEF Doc. No. 153), months before the summary judgment motion was filed, failure to oppose the motion is difficult to understand, especially given the information that Defendant sought to adjourn the motion to allow opposition to be filed to the summary judgment motion and that Defendant included affirmative defenses in its answer averring that the default was caused by Plaintiff's failure to issue payment under the loan agreement. (NYSCEF Doc. No. 39). Given all of these circumstances, and the pandemic which changed regular judicial and legal procedures, the failure to oppose the motion must have been due to law office failure. The Court also exercises its discretion and now concludes that Defendant's challenging circumstances caused by its business crises, which also were compounded by the pandemic, (NYSCEF Doc. No. 71, Faraone Affidavit in Support of (First) Motion to Vacate), and the fact that it did not learn that the motion was unopposed until it saw the judgment, also establish

excusable neglect. *(Gepp v. Int'l Harvester Co., 186 A.D.2d 418, 419, 588 N.Y.S.2d 288, 288 (1st Dept. 1992)(court analogizes the bankruptcy-dissolution of the defaulting party leading to failure to timely oppose, as akin to law office failure, in finding excusable neglect)).* Law office failure is no longer a per se unreasonable excuse for a party's default. The extent of counsel's negligence, if any, should be weighed against the merits of the defense and any lack of prejudice. *(Lavalle v. Astoria Construction and Paving Corp., 266 A.D. 2d 28 (1st Dept. 1999)).*

On the first motion to vacate, Defendant submitted an affidavit by Mr. Sebastiano Faraone, an authorized agent for Defendant (See NYSCEF , and NYSCEF 71, ¶ 32), which notes, among other allegations, that the mechanic lien filed by Precision was removed in or around January 28, 2020 after negotiations. It does not provide any documentation or detail regarding the lien release. On his latest motion to vacate, Defendant has provided the Court with the documents supporting the contention that the lien that formed the basis of the default was satisfied months prior to the summary judgment motion being filed. Defendant now argues that these documents constitute newly discovered evidence under CPRL 5015(a)(2) and may establish a meritorious defense. These documents indicate that Precision Builders agreed to discontinue the action to enforce the lien, as the email from Precision Builders indicates. (NYSCEF Doc. No. 150). Thereafter, a stipulation discontinuing the action brought by Precision Builders was signed by Defendant's original counsel on January 28, 2020. (NYSCEF Doc. No. 153). Plaintiff asserts that the Court should not consider these documents, which were not submitted with the initial moving papers on this second motion to vacate. However, at the oral argument on this motion, Plaintiff sought permission to file further responsive papers, which the Court granted. Plaintiff filed these papers on February 24, 2023. (NYSCEF Doc. No. 154).

7

The mechanic's lien is important in this motion because Plaintiff's Notice of Default to Defendants was based on the filing of the Precision Builders mechanic's lien. Both the first and second notice of default documents describe the filing of the lien by Precision Builders to be the basis of the default. For example, the first notice of default states in part: "We are writing to advise you that Lender has received Notice of Lien in the amount of $483,951.06 filed by Precision Builders Group Ltd., a copy of which is enclosed (the "Mechanics Lien")." (NYSCEF Doc. No. 51). Plaintiff filed a foreclosure action alleging that Defendant allowed a lien or encumbrance to be filed and remain against the property in violation of several provisions of the promissory notes. (Complaint ¶ 33, NYSCEF Doc. No. 1).

Moving papers supporting Plaintiff's March 10, 2020 summary judgment motion at the very least strongly imply that liens were still present; indeed the Court read the papers to so state. In fact, it is entirely possible that Plaintiff may have been under the same impression. (See NYSCEF Doc. No. 154 ¶18). Plaintiff's summary judgment motion was supported in part by an affidavit by Bastian Rose, President of Shaughnessy Capital, LLC (NYSCEF Doc. No. 43), which states in part:

> 16. On May 17, 2019, Plaintiff caused to be served on Defendant RICHMOND HOSPITALITY LLC a notice ("2nd Default Notice") wherein the said Defendant was given additional notice of the defaults under the Mortgage by virtue of the filing of the mechanic's lien against the premises in violation of the Mortgage. A copy of the 2nd Default Notice is annexed hereto as Exhibit "I."
> 17. Defendant failed to cure its defaults under the Mortgage by failing to have the mechanic's lien released and discharged from the premises.

Similarly, the affirmation of Plaintiff's attorney (NYSCEF Doc No. 42) in support of the motion also states that Defendant failed to cure its violations of the terms of the mortgages,

leaving the impression that the lien remained. It does not speak in terms of a "timely cure" for example. It states in part:

> 16. In this case, the Notes and Mortgages executed by Defendant RICHMOND HOSPITALITY LLC are presented, and as set forth in the Affidavit of Bastian Rose, submitted herewith, the said Defendant defaulted under the terms thereof by failing to comply with, interalia, Sections 2.2(c) and (d), and 7.1(m) of the Mortgages, in that the Defendant caused or allowed a lien or encumbrance to be filed and remain against the property subject to the Mortgage, and Defendants failed to cure the default thereunder despite due demand. Specifically, the Defendant caused or allowed several mechanic's liens to be placed against the premises in violation of the terms of the Notes and Mortgages, and has failed to cure the violations of the terms of the mortgages despite due demand.

Relatedly, on March 10, 2020 affirmation Plaintiff's attorney (NYSCEF Doc No. 42) submitted on the summary judgment motion further references these liens in numbered paragraph 22: "Copies of the docketing information regarding said mechanic's liens are annexed hereto collectively as Exhibit "P."" Exhibit P is a 10-page printout bearing the name "Data Trace, Judgment Docket & Lien Information." The document appears to list liens filed against the property. The Court notes that along the bottom of some of the pages appears a website address and the date 9/26/2019. Each page of the printout also bears the following statement: "Download Date" after which are printed various dates in April 2019, around the date of the first notice of default, and eleven months before the motion was filed. Neither party's papers explain what these dates might mean. The dates could refer to the date that the information was first uploaded onto the database; the date the database was searched, or something else. Neither party has provided information about whether the lien release was recorded, or when a lien search was conducted.

The lien release documents constitute new evidence of a meritorious defense and provide sufficient reason for the Court to vacate its prior orders in the interest of justice.

9

Moreover, the summary judgment motion's failure to state that the lien had in fact been satisfied at the time of the motion, puts this motion within the ambit of the C.P.L.R. 5015(a)(3), in that the papers were misleading, apparently inadvertently so. Nonetheless, the motion was decided without knowledge of material facts, and are indicative of a possible meritorious defense on Defendant's part.

Plaintiff indicates that the lien release would not impact its motion for summary judgment. The Court finds that it is premature to so conclude. Regardless of whether it this information would form the basis of a defense, or be evidence supporting a defense in this case, the information was material to determining whether summary judgment was appropriate. Had these facts been disclosed, the Court may not have found that Plaintiff met its heavy burden to establish its right to summary judgment. This is particularly true when the motion was made so soon after the filing of the answer, before any discovery took place, and while legal proceedings were still impacted by the pandemic. Had opposition been filed, Defendant likely would have pointed to the lien satisfaction and its affirmative defenses, and argued that these issues established that the motion should be denied as premature, to allow discovery to take place. *(See CPLR 3212(f) and see Gardner v. Cason, Inc., 82 A.D.3d 930, 931 (2d Dept. 2011) (summary judgment is premature where the opposing party has not had a reasonable opportunity for disclosure prior to the making of the motion)).* The documents regarding the lien release and Defendant's assertions on this motion that Plaintiff's unreasonable failure to advance funds caused the default raise issues of fact could provide a basis to defeat summary judgment, either by creating a disputed fact or showing that discovery was needed.

Plaintiff in a March 13, 2023 letter asserts without citation that the issue of whether the Abrams firm committed malpractice by failing to oppose summary judgment is now "res

10

judicata" in light of the dismissal of the malpractice action. The doctrine of res judicata precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. *(Josey v. Goord, 9 N.Y.3d 386, 389, 880 N.E.2d 18, 20 (2007).* The malpractice action did not involve the same claims as the instant action; therefore, the doctrine does not apply. Plaintiff also argues that because the malpractice action was the basis for Defendant's second motion to vacate the Order granting summary judgment, and the issue has been conclusively decided against Defendant, Defendant's motion must fail. The Court disagrees that a claim of malpractice was the basis for the motion, and regardless, was not the only basis for the motion.

In any event, "law office failure" and legal malpractice are distinguishable. While one (law office failure) may be probative of the other (legal malpractice), they are two different concepts. *(Comment, Law Office Failure: The Need for a Definition After Barasch and Eaton, 47 Albany Law Review 826 (1983)).* Law office failure, while not defined in CPLR 2005, arises in a number of scenarios wherein a lawyer or lawyers failed to protect a client's interests – failure to file a timely pleading, failure to appear at a court conference or proceeding, failure to timely file or oppose a motion, failure to comply with discovery demands, general neglect of a case, etc. Whether or not to except law office failure as an excuse for a default lies in the sound discretion of the Court. *(HSBC Bank USA v. Wider, 101 AD 3d 789 (2d Dept.); Wells Fargo Bank, N.A. v. Cervini, 84 AD.3d 789 (2d Dept); Lugauer v. Forest City Ratner Co., 44 A.D. 3d 829 (2d Dept.)).*

Legal malpractice, by contrast, is a cognizable cause of action, and requires proof of the three elements 1) that defendant failed to exercise that degree of care, skill and diligence commonly possessed and exercised by an ordinary member of the legal community, 2) that such

negligence was the proximate cause of the actual damages sustained by plaintiff, and 3) that, but for defendant's negligence, the plaintiff would have been successful in the underlying action. (*Cummings v. Donovan*, 36 A.D. 3d 648 (2d Dept.); *Vogel v. American Guar. and Liability Ins. Co.*, 148A.D. 3d 1206, 1209 (2d Dept)).

The Court further finds that excusable neglect and the other bases on which an order may be vacated have different requirements and standards than those applicable to malpractice, such that dismissal of the malpractice action does not resolve these issues. Further, while it may be argued that the malpractice dismissal included a finding that failure to respond to the summary judgment motion was not malpractice, because the Defendant had not met the pleading requirements to establish malpractice, or shown that it had a defense to the foreclosure, this does exclude a finding that the summary judgment could have been denied as premature, had the materials submitted on this motion been considered. Therefore, in regard to the question to be answered in this case, Defendant may have had a meritorious defense to summary judgment had he responded to the motion.

While Plaintiff cites case law indicating that after the proper acceleration of a debt, payment of arrears may not cure the default, it provides no case law to support the proposition that a non-monetary default caused by a lender's allegedly unreasonable failure to advance funds, which was later cured, would have the same legal consequences. Further, Defendant's allegations regarding fraud and conspiracy by the various commercial entities involved in this project and its complex lending transactions, makes this matter inappropriate for summary judgment at this pre-discovery stage of the litigation.

## Conclusion

In sum, the Court exercises its discretion to vacate the order pursuant to CPLR 5015(a), including excusable neglect, surprise and misleading or incomplete information, and a potential defense on the merits. It further finds that there are significant reasons to vacate the decision under its inherent authority in the interests of substantial justice, so that the matter can be decided on the merits. Defendant should not be deprived of its day in court. *(Mid-Hudson Properties, Inc. v. Klein, 167 AD 3d 862, 865 (2d Dept. 2018) (citations omitted)).*

Plaintiff's cross motion for sanctions is denied. Defendant's motion was not based on the same facts and arguments, and thus is not a motion brought on the same grounds. Furthermore, it was not undertaken to delay or prolong the litigation or harass or maliciously injure another. *See 22 NYCRR § 130-1.1(c).* Generally, the imposition of sanctions involves a more persistent pattern of repetitive or meritless motions, which are not found here. *(See Sarkar v. Pathak, 67 A.D.3d 606, 607 (1st Dept. 2009)).*

Consequently, for the reasons stated herein, the Court hereby GRANTS Defendant's Motion to Vacate.

Finally, because Defendant has filed for Chapter 11 Bankruptcy, and the Bankruptcy Court (Mazer-Marino, J.) lifted the bankruptcy stay in this matter for the limited purpose of permitting consideration of these motions, this matter, including discovery, must again be stayed, by virtue of 11 U.S.C. §362.

It is hereby:

ORDERED that the Court's previous Orders entering summary judgment and an order of reference, confirming the referee report and entering a money judgment, are hereby vacated; and it is further

ORDERED that the Plaintiff's cross motion is hereby denied; and it is further

ORDERED that upon the filing of this Order this matter remains stayed by virtue of the Defendant's pending bankruptcy case pursuant to federal law.

Dated: March 24, 2023

ENTER

_____
HON. WAYNE M. OZZI, J.S.C.