UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

                                               Chapter 11

RICHMOND HOSPITALITY LLC,

                                               Case No.:  22-40507-jmm

                            Debtor.
------------------------------------------------------------x

RICHMOND HOSPITALITY LLC,

                                  Plaintiff,

                                               Adv. Pro. No.: 24-01057-jmm

                 v.

SHAUGHNESSY CAPITAL LLC

                                  Defendant.
------------------------------------------------------------x

**MEMORANDUM DECISION ON DEFENDANT'S MOTIONS TO
DISMISS PLAINTIFF'S COMPLAINT AND FOR MANDATORY
AND PERMISSIVE ABSTENTION**

LaMonica Herbst & Maniscalco, LLP
Joseph S. Maniscalco, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, NY 11793
Email: jsm@lhmlawfirm.com
*Counsel for Plaintiff*
*Richmond Hospitality LLC*

Vlock & Associates, P.C.
Stephen Vlock, Esq.
630 Third Avenue, 18th Floor
New York, NY  10017
Email: svlock@vlocklaw.com
*Counsel for Defendant*
*Shaughnessy Capital LLC*

## INTRODUCTION

Richmond Hospitality LLC (the "Debtor" or "Plaintiff") asserts claims against Shaughnessy Capital LLC (the "Creditor" or "Defendant") for breach of the implied covenant of good faith and fair dealing and for equitable subordination of Creditor's claims.  Debtor also objects to Creditor's proof of claim.  Debtor had asserted claims for misrepresentation and fraud on the Court but has agreed to dismiss those two claims for relief.

Debtor's claims for relief derive from Creditor's agreement to finance the construction of a hotel.  Creditor declared an event of default under the financing agreement after a mechanic's lien was filed against the hotel project by a contractor.  Creditor commenced a state court action and obtained a judgment against Debtor for over $9.3 million after Debtor defaulted in responding to Creditor's motion for summary judgment.  The state court judge has since vacated the judgment.

Debtor alleges that Creditor manufactured the default by improperly refusing to advance funds to pay the contractor's invoices, which caused the contractor to file the lien.  Debtor alleges Creditor moved for summary judgment notwithstanding the contractor already had been paid and had released the mechanic's lien.  Further, Debtor alleges Creditor moved for summary judgment in March 2020, when the COVID-19 shutdowns started and implies that Debtor defaulted in responding to the motion for summary judgment because it was distracted by the pandemic.  Additionally, Debtor alleges the Creditor requested a $9.3 million judgment even though Creditor knew Debtor owed far less.

Creditor has filed two motions.  The first motion seeks mandatory or permissive abstention.  The second motion seeks dismissal of this adversary proceeding.  For the reasons set forth below, Creditor's motion for abstention is denied.  Creditor's motion to dismiss is granted

in part.  In that regard, Debtor's claim for breach of the implied covenant of good faith and fair dealing is dismissed solely to the extent Debtor seeks punitive damages.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding and may hear and determine the abstention motion and the motion to dismiss under 28 U.S.C. §§ 1334(b) and 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York dated August 28, 1986, as amended by the Order dated December 5, 2012.  The Court may hear and determine Defendant's motion to dismiss regardless of whether Plaintiff's claims are constitutionally core claims because a bankruptcy court may handle all pretrial proceedings, including entering an interlocutory order dismissing some, but not all, non-core causes of action in an adversary complaint. *See In re Suffolk Reg'l Off-Track Betting Corp.*, 591 B.R. 127, 129 (Bankr. E.D.N.Y. 2018).

## PROCEDURAL HISTORY

On June 17, 2024, the Debtor filed a Complaint commencing this adversary proceeding. *Richmond Hospitality LLC v. Shaughnessy Capital LLC.*, Adv. Pro. No. 24-1057-jmm (the "Adversary Proceeding"), Adv. Pro., ECF No. 1.[1]  The Debtor filed an amended complaint (the "Amended Complaint") on June 26, 2024.  Am. Compl., Adv. Pro., ECF No. 3.  On August 19, 2024, Creditor filed motions seeking mandatory or permissive abstention and dismissal.  Mot. for Mandatory or Permissive Abstention, Adv. Pro., ECF No. 5; Mot. to Dismiss Adv. Pro., Adv. Pro., ECF No. 7.  Debtor filed opposition to both motions (Adv. Pro., ECF Nos. 9, 10) and Creditor filed replies (Adv. Pro., ECF Nos. 12, 13).

---

[1] Citations to "Adv. Pro., ECF No. []" are to documents filed on the docket of the Adversary Proceeding.

The Court heard arguments on both motions on September 25, 2024.[2]  Sept. 25, 2024 Hr'g Tr. Adv. Pro. 22-1082, ECF No. 23.

## BACKGROUND

The Project and the LOC

In 2014, Debtor, as lessee, and RA Properties, LLC, as lessor, entered into a 99-year ground lease (the "Ground Lease") for real property located at 100-110 South Bridge Street, Staten Island, New York (the "Property").  Am. Compl. ¶¶ 15, 26.[3]  The Debtor intended to develop an 80-room hotel on the Property (the "Project").  Am. Compl. ¶ 15.

In January 2017, Debtor and Creditor entered into agreements providing for Creditor to finance the Project in part.  Am. Compl. ¶ 36.

In November 2018, Debtor hired Precision Builders Group, Ltd. ("Precision") as general contractor for the Project. Am. Compl. ¶ 81.  In December 2018, Debtor entered into new financing agreements with Creditor.  Am. Compl. ¶ 58.  The new financing agreements included three promissory notes.  Am. Compl. ¶¶ 58-60.  The Debtor refers to the new financing documents as the "LOC."  Am. Compl. ¶ 61.  The Debtor's obligations under the LOC were secured by, among other things, a lien on Debtor's interest in the Ground Lease.  Am. Compl. ¶ 65.  As additional security for the Debtor's obligations under the LOC, each of the Debtor's six members granted Creditor a mortgage on their respective interests in certain real properties (the "Member Real Properties"), including personal residences.  Am. Compl. ¶ 71.

---

[2] A transcript of the hearings can be found on the docket of *Richmond Hospitality LLC v. New York City Dep't of Fin. et al.*, Adv. Pro. 22-1082, ECF No. 23.  Citations to Sept. 25, 2024 Hr'g Tr. at [] are citations to that transcript.

[3] Citations to Am. Compl. ¶ [] are citations to the Amended Complaint.

4

<u>The Creditor Collection Action</u>

In March 2019, Creditor rejected and declined to pay two of Precision's requisitions for payment, aggregating approximately $483,951.06 (the "Precision Requisitions"). Am. Compl. ¶ 90.

In March 2019, Precision filed a mechanic's lien against the Project based on Debtor's failure to pay the Precision Requisitions. Am. Compl. ¶ 91. In April 2019, Creditor called a default under the LOC due to Precision's filing of the mechanic's lien on the Project. Am. Compl. ¶ 92. In November 2019, Creditor commenced an action against the Debtor in the Supreme Court of the State of New York, County of Richmond, seeking to foreclose its interest in the Ground Lease and a money judgment for all amounts owing under the LOC (the "Creditor Collection Action"). Am. Compl. ¶ 120; Sept. 25, 2024 H'rg Tr. 18:24-19:4.

In January 2020, Precision released its mechanic's lien on the Project. Am. Compl. ¶¶ 144-146. Notwithstanding, on March 20, 2020, Creditor moved for summary judgment in the Creditor Collection Action. Am. Compl. ¶ 152. Debtor notes the motion for summary judgment was filed shortly after the States commenced shutdowns to prevent the spread of COVID-19. Am. Compl. ¶ 151-152. The state court granted Creditor's motion for summary judgment, on default, in May 2021. Am. Compl. ¶ 170.

Debtor claims there was no basis for Creditor to reject the Precision Requisitions and Creditor moved for summary judgment to destroy the Project, collect exorbitant fees, and sell the Member Real Properties. Am. Compl. ¶¶ 96, 152, 156. Further, the Debtor claims Creditor set up the LOC as a loan to own scheme and Creditor did not pay the Precision Requisitions because Creditor lacked the resources to fund the requisitions. Am. Compl. ¶ 161, 165.

The Foreclosure Actions

After obtaining judgment in the Creditor Collection Action, Creditor commenced six actions (collectively, the "Foreclosure Actions") in New York Supreme Court to foreclose the mortgage liens on the Member Real Property.  Def.'s Mem. in Supp. of Mandatory or Permissive Abstention, Adv. Pro., ECF No. 6, at 10, 11.

The Tort Action

On or about July 7, 2021, the Debtor commenced an action (the "Tort Action") in the Supreme Court, Richmond County, Index No. 151281/2021, against Creditor and several other entities and individuals, including UMF Contracting Corp. ("UMF"), and K.O.W. Building Consultants ("KOW").  Def.'s Mem. in Supp. of Mandatory or Permissive Abstention, Adv. Pro., ECF No. 6, at 12.  The Debtor asserted one claim against Creditor for negligent hiring, alleging that Creditor was negligent in hiring KOW.  Sept. 25 Hr'g Tr. 22:5-15.  The Debtor reported that the Tort Action has been dormant since the state court judge denied Creditor's motion to dismiss the claim.  Sept. 25, 2024 Hr'g Tr. 22: 5-15; 24:11-13.

Debtor's Bankruptcy Case

On March 16, 2022, Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").  *In re Richmond Hospitality LLC*, Case No. 22-40507, ECF No. 1.[4]

On May 18, 2022, the Court entered an order converting Debtor's chapter 7 case to one under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case").  Order Granting Debtor's Mot. to Convert Case to a Case Under Chapter 11 of the Bankr. Code Pursuant to 11 U.S.C. § 706(a), ECF No. 43.

---

[4] Citations to "ECF No. []" are to documents filed on the docket of the Debtor's bankruptcy case, Case No. 22-40507-jmm.

On July 26, 2022, Creditor filed a proof of claim, identified on the claims register of the Bankruptcy Case as Claim Number 3-1 (the "POC"). The POC states that Creditor is owed $8,771,303.28, its claim is fully secured by a leasehold mortgage on the Property, and the amount accrues interest at 23.75% per annum. *In re Richmond Hospitality LLC*, Case No. 22-40507, Claim No. 3-1 at 2. On November 10, 2022, Debtor filed its objection to the POC. Chapter 11 Debtor's Obj. to Proof of Claim Numbered 3-1 of Shaughnessy Capital LLC, ECF No. 113.

On December 18, 2023, the Court entered an Order granting Creditor's motion for relief from stay to allow the Foreclosure Actions to proceed against the non-debtor defendants to foreclose Creditor's liens on the Member Real Property, which states:

> ORDERED, that the Motion is granted to the extent that the automatic stay is modified to allow Shaughnessy to proceed to fully prosecute, including but not limited to moving to consolidate, the Foreclosure Actions against the defendants therein and the non-debtor properties that are the subject thereof; and it is further
>
> ORDERED, that Shaughnessy will not use any determinations as to the amounts owed by any defendants in the Foreclosure Actions, against the Debtor in the Debtor's bankruptcy case.

Order Granting Mot. Pursuant to 11 U.S.C. § 362 for Relief from the Automatic Stay, ECF No. 325 (the "Foreclosure Action Stay Relief Order").

On January 27, 2023, the Court entered an order granting the Debtor's motion for relief from stay to obtain relief from the default judgment entered against it in the Creditor Collection Action, which states:

> ORDERED that the Debtor's Motion is granted to the extent that the automatic stay is lifted to permit the action entitled "Shaughnessy Capital LLC v. Richmond Hospitality, et al.," Index No. 152641/2019, pending in the Supreme Court, Richmond County, to continue and/or resume, and all parties be permitted to pursue all claims, defenses, motions and counterclaims asserted therein and appeals from any rulings therein.

Order Granting Chapter 11 Debtor's Mot. Seeking the Entry of an Order, Pursuant to 11 U.S.C. § 362, Granting Relief from the Automatic Stay, ECF No. 161, at 2.  On March 24, 2023, the state court judge vacated his decision that granted Creditor summary judgment on default.  Sept. 25, 2024 Hr'g Tr. 19:24-20:3.

<strong>DISCUSSION</strong>

**I. Defendant's Motion for Abstention**

    **A.**  **Mandatory Abstention is Inapplicable Because Debtor's Claims for Relief are Core Proceedings.**

Section 1332(c)(2) of title 28 of the United States Code governs mandatory abstention in bankruptcy cases and states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Creditor contends that pursuant to section 1334(c)(2), this Court must abstain from adjudicating the claims asserted in the Amended Complaint because the claims are "related to" state law causes of action that can be adjudicated timely in state court.  Def.'s Mem. of Law in Supp. of Mandatory or Permissive Abstention, Adv. Pro., ECF No. 6, at 16–31.  Debtor argues that mandatory abstention is inapplicable because its claims for relief are core proceedings.  Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Mandatory or Permissive Abstention, Adv. Pro., ECF No. 9, at 2–4.

"Core proceedings" and "related to" are terms used in section 157(b) of title 28 of the United States Code to define the bankruptcy court's jurisdiction.  Section 157 states:

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1).  For a matter to be a core proceeding, the matter must be constitutionally core as well as statutorily core.  *Stern v. Marshall*, 564 U.S. 462 (2011).  Counterclaims by a debtor against persons filing claims against the estate are statutorily core proceedings because they are denominated as core under section 157(b)(2)(C) of title 28 of the United States Code.  28 U.S.C. § 157(b)(2)(C).  Counterclaims are constitutionally core if the counterclaims are resolved in the process of ruling on a creditor's proof of claim.  *Stern*, 564 U.S. at 518 ("We conclude today that Congress, in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is ***not resolved*** in the process of ruling on a creditor's proof of claim.") (emphasis added).

Prior to the United States Supreme Court's decision in *Stern*, the Second Circuit Court of Appeals provided guidance as to when contract disputes are core proceedings, stating:

> In determining whether a contract dispute . . . is core, we look to "(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization."  The nature of the proceeding is also important.  "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function."

*Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) (internal citations omitted).  The bankruptcy court in *Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 349 B.R. 108, 112 (Bankr. S.D.N.Y. 2006) also discussed when contract disputes are core, stating:

> When a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it involves a pre-petition contract claim arising under state law.  The filing of the claim triggers the process concerning "allowance and disallowance of claim" and establishes the creditor's right to

participate in the distribution of the estate. This process is integral to the debtor's restructuring accomplished through the equity jurisdiction of the bankruptcy court.

*Id*. at 112 (internal citations omitted).

Although the claims for relief assert State law claims based on Creditor's alleged pre-petition date breach of contract, Debtor's claims for relief are both statutorily and constitutionally core. The claims for relief are statutorily core because they are counterclaims asserted against Creditor and Creditor filed the POC. The claims for relief are constitutionally core because the claims for relief will be resolved in connection with determining the allowed amount and priority of Creditor's claims asserted in the POC.

The cases cited by Creditor in support of its position that the Debtor's claims for relief are "related to" proceedings (as opposed to core proceedings) are distinguishable. In each of those cases, the non-debtor defendant did not file a proof of claim. *See Silverman v. Tudor Ins. Co. (In re Lenders Abstract & Settlement Serv.)*, 493 B.R. 385, 394 (E.D.N.Y. 2013) ("[A] breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core."); *Scott v. AIG Prop. Cas. Co.*, No. 17-cv-1052-GHW, 2017 WL 1380607, at *3 (S.D.N.Y. April 17, 2017) ("Defendants have not filed a claim against the estate, so the resolution of the adversary proceeding would not necessarily resolve any such claim against the estate."); *Welded Constr., L.P. v. The Williams Cos., Inc. (In re Welded Constr., L.P.)*, 609 B.R. 101, 112 (Bankr. D. Del. 2019) (distinguishing the estate's claims against creditors filing proofs of claim from claims against creditors that did not file proofs of claim and finding "the causes of action that [the debtor] alleges against [the creditor] are core matters vis-à-vis their nature as counterclaims against [the creditor's] proofs of claim."); *Maa-Sharda, Inc. v. First Citizens Bank & Trust Co. (In re Maa-Sharda, Inc.)*, No. 14–21380–

PRW, 2015 WL 1598075, at *4 (Bankr. W.D.N.Y. April 19, 2015) (noting the defendants did not file proofs of claim).

*Ne. Indus. Dev. Corp. v. Parkstone Cap. Partners, LLC (In re Ne. Indus. Dev. Corp.)*, No. 14-cv-7056, 2015 WL 3776390, at *1 (S.D.N.Y. June 16, 2015), cited by Creditor, is inapposite. In that case, the district court affirmed the bankruptcy court's proposed findings of fact and conclusions of law dismissing plaintiff's fraud claims. *Id.* at *8.  Although the bankruptcy court determined that the debtor's state law fraud claims were non-core, related to matters, the bankruptcy court, nonetheless, heard the claims and submitted proposed findings of fact and conclusions of law to the district court. *Id.* at *1.  The bankruptcy court did not abstain. *Id.*  It is uncertain whether defendant in that case even requested abstention.

Based on the foregoing, the Court is not required to abstain from hearing and determining the claims for relief asserted by the Debtor in the Amended Complaint.

**B.  Permissive Abstention is Not Warranted.**

Section 1332(c)(1) of title 28 of the United States Code governs permissive abstention in bankruptcy cases and states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

The burden of proof is on the movant to establish by a preponderance of the evidence that permissive abstention is warranted.  *See Bickerton v. Bozel S.A.* (*In re Bozel S.A.*), 434 B.R. 86, 102 (Bankr. S.D.N.Y. 2010) (citing *In re Altchek,* 119 B.R. 31, 35 (Bankr. S.D.N.Y.1990)); *Nasser v. J.P. Morgan Chase Bank, N.A. (In re Nasser)*, No. 17-40254-nhl, 2020 WL 5985427,

at *3 (Bankr. E.D.N.Y. Oct. 8, 2020); *In re AOG Ent., Inc.*, No. 16-11090 (SMB), 2019 WL 1054921, at *9 (Bankr. S.D.N.Y. Mar. 5, 2019).

Whether to abstain is within the sound discretion of the bankruptcy court. *See Osuji v. HSBC Bank, U.S.A.*, 580 B.R. 605, 612 (E.D.N.Y. Jan. 26, 2018); *Abir v. Malky, Inc. (In re Abir)*, No. 09 Civ. 2871, 2010 WL 1169929, at *7 (E.D.N.Y. Mar. 22, 2010) (citing *In re Petrie Retail. Inc.*, 304 F.3d 223, 232 (2d Cir. 2002)). However, a bankruptcy court's exercise of such discretion should be informed by the principle that "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given to them,' and may abstain only for a few 'extraordinary and narrow exception[s].'" *Residential Funding Co. v. UBS Real Estate Secs., Inc. (In re Residential Cap., LLC)*, 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014) (quoting *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y.2003) (*quoting Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976))); s*ee In re Nasser*, 2020 WL 5985427, at *3 (noting permissive abstention should be applied sparingly.); *see also BGFI GP I LLC v. Prieto (In re WP Realty Acquisition III LLC)*, 626 B.R. 154, 162 (Bankr. S.D.N.Y. 2021) ("[T]here is a presumption in favor of the exercise of federal jurisdiction and against abstention."); *cf. Ala. Pub. Serv. Comm'n. v. S. R. Co.*, 341 U.S. 341, 361 (1951) (Frankfurter, J., concurring in result) ("[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.").

Generally, bankruptcy courts consider the following 12 factors in determining whether to abstain:

> (1) the effect or lack thereof on the efficient administration of the bankruptcy estate if a Court recommends abstention;
>
> (2) the extent to which state law issues predominate over bankruptcy issues;
>
> (3) the difficulty or unsettled nature of the applicable state law;

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden on the court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of nondebtor parties.

*See In re Abir*, 2010 WL 1169929, at *7. "The[se] factors largely ask the [c]ourt to balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts." *In re Nasser*, 2020 WL 5985427, *3. The effect on the administration of the estate, whether the claim involves only state law issues, and, whether the proceeding is core or non-core, are given more weight than the other factors. *See DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 220, 224 (Bankr. D. Del. 2010).

      *i. The Effect on the Efficient Administration of the Estate if a Court Recommends Abstention and the Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case*

Debtor's claims for relief are highly related to the Bankruptcy Case because Creditor's claim is the largest claim filed in the Bankruptcy Case. The extent to which the POC is allowed impacts every creditor and party in interest. Further, abstaining will negatively impact the efficient administration of the estate. The equitable subordination claim only may be heard and determined by this Court. The claims for breach of contract and equitable subordination involve

the same parties and facts. Abstaining from the breach of contract claim while hearing and determining the equitable subordination claim could result in duplicative proceedings, inefficiencies, and inconsistent decisions. These two factors weigh against abstention.

> ### ii. The Extent to Which State Law Issues Predominate over Bankruptcy Issues and the Difficulty or Unsettled Nature of the Applicable State Law

Whether Creditor breached the covenant of good faith and fair dealing is a state law issue. The law, however, is settled, and bankruptcy courts routinely hear and determine breach of contract claims. Accordingly, there is no need to defer to state court expertise. Debtor's claim for equitable subordination is unique to bankruptcy and does not implicate state law. These two factors weigh against abstention.

> ### iii. The Substance Rather than Form of an Asserted "Core" Proceeding

As set forth above, the claims for relief are core proceedings. This factor weighs against abstention.

> ### iv. The Presence of a Related Proceeding Commenced in State Court or Other Nonbankruptcy Court

The State Court Actions are all pending in New York state courts. Further, the Debtor is a nominal defendant in the Foreclosure Actions, and those actions concern real property that is not property of the estate. However, the Court's decision on the Abstention Motion will have no impact on Creditor's claims against the other Defendants in the Foreclosure Actions. Further, the Tort Action and the Creditor Collection Action are in the early stages of litigation. This factor weighs against abstention.

> ### v. The Jurisdictional Basis, If Any, Other Than 28 U.S.C. § 1334.

This factor weighs in favor of abstention because the sole jurisdictional basis is section 1334.

*vi. The Feasibility of Severing State Law Claims from Core*
  *Bankruptcy Matters to Allow Judgments to Be Entered in State*
  *Court with Enforcement Left to the Bankruptcy Court*

The state law claims are core bankruptcy matters.  Accordingly, there is no ability to

sever the state law claims from the core matters.  This factor weighs against abstention.

*vii. The Burden on the Court's Docket*

The Adversary Proceeding is not anticipated to unduly burden the Court's docket.

Creditor claims the burden on this Court will be greater than the burden on the state court

because this Adversary Proceeding was recently commenced, and the State Court Actions have

been pending for years, and the majority are close to completion.  Def.'s Mem. of Law in Supp.

of Mandatory or Permissive Abstention, Adv. Pro., ECF No. 6, at 36.  The Foreclosure Actions

may be close to completion, but they were not intended to be determinative of the allowed

amount of the POC.  Rather, the Court granted Creditor relief from the automatic stay to proceed

with the Foreclosure Actions on the condition that the Foreclosure Actions would have no

preclusive effect on the Debtor's objections to the POC.  *See infra* p. 7, *supra* pp.23-24.

Accordingly, a swift outcome in the Foreclosure Actions would not obviate litigation in this

Court concerning the allowed amount and priority of the POC.  The Creditor Collection Action

has been pending for years; the state court judge, however, recently vacated its default judgment.

Creditor has not asserted that the Creditor Collection Action has progressed beyond the

discovery phase.  Lastly, the Tort Action has not progressed past the pleading stage.  This factor

weighs against abstention.

*viii. The Likelihood that the Commencement of the Proceeding in*
  *Bankruptcy Court Involves Forum Shopping by One of the*
  *Parties*

The Debtor prefers this forum and Creditor prefers proceeding in state court.  This factor

is neutral.

15

*ix. The Existence of a Right to a Jury Trial*

Creditor asserts "if this Court were to deny abstention, [Creditor] believes that the issues would be subject to trial by jury before this Court.  This factor weighs in favor of abstention." Def. Mem. of Law in Sup. of Mandatory or Permissive Abstention, Adv. Pro., ECF No. 6., at 37. Creditor is incorrect.  "If a creditor's proof of claim is met with an adversary proceeding and the determination of that adversary proceeding affects the claims-allowance process, the creditor does not have a right to a jury trial, even if the adversary proceeding involves claims historically tried in a court of law."  *MCI WorldCom Commc'ns, Inc. v. Commc'ns Network Int'l, Ltd. (In re WorldCom, Inc.)*, 378 B.R. 745, 753 (Bankr. S.D.N.Y. 2007).  This factor weighs against abstention.

*x. The Presence in the Proceeding of Nondebtor Parties*

The only nondebtor party to this Adversary Proceeding is the Creditor. This factor weighs against abstention.

As set forth above, abstention may result in duplicative proceedings and interfere with the prompt and efficient administration of the Bankruptcy Case.  Additionally, the Court should exercise its jurisdiction to hear and determine the Debtor's claims for relief because the claims are core.  Although Debtor's claim for breach of the covenant of good faith and fair dealing is a state law claim, determining the claim does not require expertise.  Primarily, for those reasons, the Court finds that Creditor has failed to establish by a preponderance of the evidence that permissive abstention is warranted.

## II. **Defendant's Motion for Dismissal**

### A. **Debtor's Failure to Remove the State Court Actions Does Not Constitute Grounds for Dismissal.**

Creditor argues this Adversary Proceeding is improper because the claims for relief asserted in the Amended Complaint should have been brought, or were brought, in the Foreclosure Actions, the Creditor Collection Action, or the Tort Action (collectively, the "State Court Actions").  Def.'s Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 8, at 2–4, 11.  Creditor contends that if Debtor wished to have this Court hear and determine the claims for relief asserted in its Amended Complaint, Debtor should have removed the State Court Actions to this Court.  *Id.*  Creditor asserts this Court should dismiss the Amended Complaint based on Debtor's failed to remove those actions to this Court.  *Id.*  The Court disagrees with the Creditor's arguments.  Although removal of state court actions to the Bankruptcy Court is permitted, removal of state court actions is not required for this Court to resolve Debtor's objections to the POC and Debtor's affirmative claims for relief.  Once Creditor filed the POC, Creditor consented to the bankruptcy court's jurisdiction to determine its claims against Debtor and Debtor's claims against Creditor, to the extent those claims for relief are integral to the resolution of the POC.

A creditor desiring the opportunity to receive a distribution from the bankruptcy estate on account of its claim may file a proof of claim. 11 U.S.C. §§ 501(a), 502(a); Fed. R. Bankr. P. 3021.  By filing a proof of claim, a creditor consents to the Bankruptcy Court's jurisdiction to adjudicate the claim.  *See Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power."); *see also Penson Fin. Servs. v. O'Connell (In re Arbco Cap. Mgmt., LLP)*, 479 B.R. 254, 262–63 (S.D.N.Y. 2012)

("A creditor may subject itself to the binding authority of the bankruptcy court by filing a proof of claim against the bankrupt estate.").

Once a proof of claim is filed, the debtor and all parties in interest may object to the proof of claim, including objecting on the grounds that the "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Generally, the claims resolution process occurs in the Bankruptcy Court, even if the claims against the debtor are the subject of state court actions that were pending at the time the bankruptcy case was filed and those actions were not removed to the bankruptcy court.

Instructive is *In re Welded Constr., L.P.*, 609 B.R. 101 (Bankr. D. Del. 2019). In that case, Welded Construction provided services to Transco and related entities. *Id.* at 107. Transco refused to pay Welded's invoices, claiming Transco had been overbilled. *Id.* at 108. Transco sued Welded in Oklahoma state court. *Id.* Welded then commenced a chapter 11 bankruptcy case. *Id.* at 107. Two of the Transco companies filed proofs of claim, but other Transco companies did not. *Id.* at 110–11. Welded commenced an adversary proceeding in the bankruptcy case. *Id.* at 111. The complaint included causes of action objecting to Transco's proofs of claims. *Id.* Additionally, the complaint asserted causes of action against the Transco companies for breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relationships, turnover, and other causes of action. *Id.* In response, Transco moved for abstention, transfer of venue to a federal court in Oklahoma, and dismissal of the complaint. *Id.* In denying the request for abstention, the court stated:

> The Debtor has filed the instant complaint alleging breach of contract, among other claims, by the Defendants in conjunction with objections to Defendant Transco's proofs of claim. Ultimately, resolution of the Debtor's complaint and objections will determine whether money will flow from the estate to Defendants pursuant to the proofs of claim or whether money will flow from the Defendants to the estate pursuant to the instant complaint, which is essentially a counter-claim

18

> to Defendant Transco's proofs of claim. Resolution of one necessarily implicates resolution of the other.
>
> Because Transco has filed its proofs of claim, it has subjected itself to the jurisdiction of the Court. It logically and necessarily follows that the Court should exercise its jurisdiction to determine the validity, if any, of the proofs of claim Transco has filed. Transco's pending but stayed breach of contract action in the State Court should not change this result. A bankruptcy court has an inherent responsibility to exercise its jurisdiction to effectuate one of the core features of the bankruptcy process itself — the claims resolution process.

*Id.* at 113.  Although framed as a decision on abstention, the court's analysis is applicable here in connection with Creditor's claim that this Adversary Proceeding must be dismissed based on Debtor's failure to remove the State Court Actions.

Also instructive is *Asousa P'ship v. Pinnacle Foods Inc. (In re Asousa P'ship)*, 276 B.R. 55 (Bankr. E.D. Pa. 2002).  Asousa owned a factory that it leased to Pinnacle.  *Id.* at 57. Pinnacle failed to pay rent.  *Id.*  Asousa terminated the lease and commenced an action in Pennsylvania state court for possession and money damages.  *Id.*  Pinnacle counterclaimed, alleging Asousa failed to make improvements and repairs as required under the lease.  *Id.* Thereafter, Asousa filed a petition for relief under chapter 11 of the Bankruptcy Code.  *Id.* at 58. Although Asousa timely removed the Pennsylvania state court action to the bankruptcy court, the court granted Pinnacle's motion to remand the action back to Pennsylvania state court.  *Id.* Pinnacle filed a proof of claim stating that its claims arise "exclusively out of the facts set forth in its [s]tate [c]ounterclaim."  *Id.*  Asousa filed an objection to the proof of claim and then commenced an adversary proceeding.  *Id.*  In the complaint, Asousa restated its objection to the proof of claim, sought declaratory judgment that it was entitled to possession of the real property, and requested money damages for Pinnacle's breach of the lease.  *Id.* at 58–59. Pinnacle then moved to dismiss the complaint or for abstention.  *Id.* at 59.  The court denied the motion holding that Pinnacle subjected itself to the jurisdiction of the bankruptcy court and the

bankruptcy court had the authority to rule on Asousa's claims against Pinnacle. The court observed:

> [I]t is obvious that Debtor wants to have this controversy resolved in the bankruptcy court whereas Pinnacle wants the matter litigated in State Court. In essence, both parties are forum shopping. Admittedly, as Pinnacle has pointed out in its brief, Debtor did not have to assert the Counterclaims in this proceeding since it had already asserted the same claims against Pinnacle in the State Court Action. However, if Debtor had chosen not to assert its claims in this Court in response to Pinnacle's Proof of Claim, Debtor would have been forced to defend against Pinnacle's side of the controversy in this Court while asserting its side of the controversy in State Court. Under such circumstances, Pinnacle cannot fault Debtor for responding to its proof of claim by presenting all the extant issues in this jurisdiction.

*Id.* at 79. The *Asousa* court's rationale applies here, albeit the facts in this case are more compelling than the debtor's facts in *Asousa*. Unlike *Asousa*, Debtor did not assert its claims for breach of the covenant of good faith and fair dealing in the State Court Actions and Debtor could not assert its claims for equitable subordination in the State Court Actions because the bankruptcy court has exclusive jurisdiction to hear and determine that claim.

To summarize, as was the case for the debtors in *Welded Construction* and *Asousa*, the Debtor's decision not to remove the State Court Actions to this Court is not germane as to whether the Adversary Proceeding should be dismissed. Once Creditor filed the POC, Creditor consented to this Court's jurisdiction to hear and determine Creditor's claims and Debtor's counterclaims. Anecdotally, removal of state court causes of action where a debtor is a defendant is not the norm. Typically, those state court actions are stayed by the automatic stay and the claims are resolved through the bankruptcy claims resolution process. Although the Creditor believes it was improper for the Debtor not to remove the State Court Actions, there is nothing inherently improper about it.

Creditor cites *Machat v. Sklar*, No. 96 Civ. 3796, 1997 WL 599384 (S.D.N.Y. Sept. 29, 1997) to support its proposition that "upon failing to remove in a timely manner, a plaintiff

cannot commence an action to circumvent the removal statute." Def.'s Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 8, at 3. In *Machat*, a state court defendant commenced an action seeking declaratory judgment that the dispute was governed by ERISA and the federal district court had exclusive jurisdiction. *Machat*, 1997 WL 599384, at *3. The defendant in the federal court action (and plaintiff in the state court action) requested abstention. *Id.* at *3–5. The *Machat* court held that the failure to bring the action in federal court until after the removal deadline had expired was one factor, among many factors, that weighed heavily in favor of abstention. *Id.* at *5. *Machat* does not hold that failure to timely remove an action bars commencement of a federal court action. More importantly, the *Machat* case is not a bankruptcy case and does not analyze whether a bankruptcy court should abstain from hearing a debtor's claims and counterclaims based on the debtor's failure to remove an action.

*Int'l Assoc. of Entrepreneurs of America v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995), cited by Creditor, is inapposite. Like *Machat*, a state court defendant commenced an action seeking declaratory judgment that the dispute was governed by ERISA and the federal district court had exclusive jurisdiction. *Id.* at 1268. The defendant commenced the declaratory judgment action after its attempt to remove the state court action was denied because the notice of removal was not filed timely. *Id.* The Eighth Circuit Court of Appeals noted that the state court and federal court had concurrent jurisdiction to determine whether ERISA applied. *Id.* at 1269. The Eighth Circuit Court of Appeals held that the district erred by dismissing the case and should have stayed the declaratory judgment action pending a decision by the state court as to whether the dispute was governed by ERISA. *Id.* at 1271. Like *Machat*, *Angoff* does not consider the principals of bankruptcy jurisdiction.

B. **This Adversary Proceeding Is Not Barred by the Prohibition on Claim Splitting.**

Creditor argues the Court should dismiss this Adversary Proceeding because the Debtor is improperly engaging in claim splitting. *See* Def.'s Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 8, at 5–6; Def.'s Reply Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 12, at 3–4.

The doctrine of claim splitting prevents plaintiffs from maintaining "two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. Cal. Dep't of Health Servs.,* 487 F.3d 684, 688 (9th Cir. 2007). A court's authority to stay or dismiss a duplicative suit based on claim splitting is part of the court's "general power to administer its docket." *Kanciper v. Suffolk Cnty. Soc'y for the Prevention of Cruelty to Animals, Inc*., 722 F.3d 88, 92–93 (2d Cir. 2013). The "rule against claim-splitting," shares the purpose and principles of the law of claim preclusion. *Sacerdote v. Cammack Larhette Advisors*, LLC, 939 F.3d 498, 504–05 (2d Cir. 2019). The difference between the two doctrines is that the claim splitting doctrine can be "raised to bar one of two suits that are both still pending; the latter is generally raised, after a prior suit is resolved on the merits, to preclude a party (or its privy) from relitigating claims in a subsequent suit that were or could have been raised in the prior action." *Sacerdote*, 939 F.3d at 505 (citations omitted).

The doctrine of claim splitting may require dismissal of an action if both actions are pending in federal court; however, the doctrine is inapplicable if one action is pending in federal court and the other is pending in state court. *Kanciper*, 722 F.3d at 92–93 (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000)). Although plaintiffs generally do not have the right to maintain two separate actions, which consist of the same subject matter, simultaneously in the same court and against the same defendant, "*as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings*

concerning the same matter in the Federal court having jurisdiction . . . ."  *Id.* at 92 (emphasis added).  The *Kanciper* court noted:

> These different approaches, "involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts," are well established. As the Supreme Court has noted, "[t]his difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

*Id.* (citations omitted).

Assuming *arguendo* that the Adversary Proceeding is duplicative of one of the State Court Actions, the claim splitting doctrine is inapplicable because each of the State Court Actions is pending in a New York state court.  Therefore, it would be error to abstain or dismiss the Adversary Proceeding based on the doctrine of claim splitting.

*Ambase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63 (2d Cir. 2003) cited by Creditor is distinguishable.  The federal district court in *Ambase Corp.* dismissed the action due to res judicata (not claim splitting) because the same causes of action had been litigated and determined previously in the Delaware Chancery Court.

**C.**  **The Foreclosure Action Stay Relief Order Does Not Render this Adversary Proceeding Improper.**

Creditor claims the Court must dismiss this Adversary Proceeding because the Court previously granted Creditor relief from the automatic stay so that Debtor's objections and counterclaims may be resolved in the Foreclosure Actions.  Def.'s Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 8, at 4–5.  Creditor is correct that the Court entered the Foreclosure Action Stay Relief Order to enable Creditor to foreclose its mortgage liens on the Member Real Property, which is not property of the Debtor's estate.  However, the Foreclosure Action Stay Relief Order states that "[Creditor] will not use any determinations as to the amounts owed by any defendants in the Foreclosure Actions, against the Debtor in the Debtor's bankruptcy case."

Foreclosure Action Stay Relief Order, at 2.  The plain language of that Order contemplates that the findings of fact and holdings in the Foreclosure Actions would have no preclusive effect in this Court.  The intent of that Order is evidenced by Creditor's and the Court's statements at the hearing on Creditor's motion for relief from stay in the Bankruptcy Case:

> MR. VLOCK: … [W]e're not going to be seeking anything against them [the Debtor] because they're a nominal defendant. We're not looking to get anything against them. They're non-debtor properties. We're just looking to get repaid from those properties which [the] debtor doesn't own. So we're not looking for anything against the debtor in those cases.
>
> THE COURT: Right, and the thing of it is, though, I guess what I'm really concerned [about] is I really don't want the debtor to have to even monitor those state court actions which they'll have to do if the lender intends to use any of those findings … of fact or conclusions of law from those state court actions in this court.
>
> So if the lender agrees that the debtor is out of it, the debtor doesn't have to defend, the debtor doesn't have to do anything and whatever happens there, whatever findings occur there have no impact on this bankruptcy estate and the debtor's objection to the claim, then I'm inclined to grant relief from stay.
>
> MR. VLOCK: That's fine, your Honor. I'm happy to stipulate to that.

Nov. 29, 2023 Hr'g Tr. 24:25-25:19, ECF No. 321.  The Court disagrees with Creditor's conclusion that Debtor acted improperly by commencing this Adversary Proceeding instead of asserting the claims in the Foreclosure Actions.  As set forth above, the Court granted relief from stay to permit the Foreclosure Actions to proceed only if the Debtor could litigate its objection to the POC in this Court unfettered by issue or claim preclusion.

### D.  Creditor's Motion to Dismiss the Amended Complaint for Failure to State a Claim is Denied in Part and Granted in Part.

In addition to the arguments set forth above, Creditor seeks to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*i. Standards for Motion to Dismiss*

Rule 7012(b) of the Federal Rules of Bankruptcy Procedure incorporates Rule 12(b)(6) of the Federal Rules of Civil Procedure and permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(b)(6). "The question in a Rule 12 motion to dismiss is 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *In re Moyer Grp., Inc.*, 586 B.R. 401, 407 (Bankr. S.D.N.Y. 2018) (quoting *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 320 (S.D.N.Y. 2015)). The purpose of a Rule 12(b)(6) motion "is to assess the legal feasibility of the complaint, not to weigh the evidence which the plaintiff offers or intends to offer." *Citibank, N.A. v. K-H Corp.*, 745 F. Supp. 899, 902 (S.D.N.Y. 1990). In determining a motion to dismiss under Rule 12(b)(6), the Court must accept all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021); *Secs. Inv. Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 68 (2d Cir. 2000).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility of a claim exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility depends on various considerations, including, the complete factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). A court need not accept conclusory or subjective allegations. *See Iqbal*, 556 U.S. at 678

("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see Twombly*, 550 U.S. at 545 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.") (internal quotations omitted).

When deciding a motion to dismiss for failure to state a claim, the Court is confined to "the allegations within the four corners of [the] complaint" which includes "any document attached to the [c]omplaint, any statements or documents incorporated in the [c]omplaint by reference, any document on which the [c]omplaint heavily relies, and anything of which judicial notice may be taken." *Libbey v. Vill. of Atl. Beach*, 982 F. Supp. 2d 185, 201 (E.D.N.Y. 2013); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (finding a document "integral" to a complaint where the complaint "relies heavily upon its term and effect").

> ii. *Creditor's Motion to Dismiss the First Claim for Relief (Breach of Implied Covenant of Good Faith and Fair Dealing)*

> > a. <u>Plaintiff's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing Is Not Duplicative.</u>

Creditor argues the First Claim for Relief must be dismissed because it is duplicative of the Debtor's claim for breach of contract. Def.'s Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 8, at 9. Debtor responds that it has not asserted a separate claim for breach of contract. Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss, Adv. Pro., ECF No. 10, at 10. Creditor replied by stating:

> On page 3 of the Debtor's amended complaint, the Debtor very plainly states that it filed the adversary proceeding 'in order to recover damages from the Defendant for, among other things, its **<u>breach of contract . . . .</u>**' Now, the Debtor wants to disavow its own pleading, and make us believe that it was not asserting a breach of contract claim. This is the Debtor's typical tactic of saying anything, even if it is untrue, and changing its position to suit the circumstances.

Def.'s Reply Mem. in Supp of Mot. to Dismiss, Adv. Pro., ECF No. 12, at 5 (emphasis in original).  The "breach of contract" language in the Amended Complaint is included under the heading "Nature of the Proceeding."  Am. Compl. at pp. 3–4.  That portion of the Amended Complaint is a summary of all causes of action included in the Amended Complaint and is not denominated as a separate cause of action or claim for relief.  *Id.*  "A breach of the covenant of good faith is considered to be a breach of the underlying contract."  *Combustion Eng'g, Inc. v. Imetal*, 235 F. Supp. 2d 265, 270 (S.D.N.Y. 2002), *amended on reconsideration*, 235 F. Supp. 2d 265 (Jan. 6, 2003).  The Court reads the "breach of contract" language on the third page of the Amended Complaint as shorthand for a breach of the implied covenant of good faith and fair dealing as opposed to a separate cause of action.  Accordingly, the Court will not dismiss the First Claim for Relief on the grounds that it is duplicative of a breach of contract claim.

      b. <u>The Amended Complaint Adequately Pleads a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.</u>

A duty of good faith and fair dealing is implied in every contract.  *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.,* 259 F. Supp. 3d 16, 37 (S.D.N.Y. 2017), *aff'd*, 712 F. App'x 85 (2d Cir. 2018).  The implied covenant includes promises that a "reasonable person in the position of the promisee would be justified in understanding were included" in the contract, and, when the contract involves the exercise of discretion, that the party promises "not to act arbitrarily or irrationally in exercising that discretion."  *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995).  (citations omitted).  The implied covenant, however, does not include any term inconsistent with the terms of the contractual relationship.  *Id.*

"The elements of a claim of breach of the implied covenant are similar to causes of action for breaches of duties of care, in that it requires the existence of a duty, breach of that duty,

causation, and damages." *Hadami, S.A. v. Xerox Corp.,* 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017). A plaintiff sufficiently asserts a claim for an implied covenant by alleging conduct that undermines a contract's purpose without breaching its express terms. *See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116, 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009).

The Debtor has alleged facts sufficient to state a claim for breach of the implied covenant of good faith and fair dealing. The Debtor alleged that Creditor owed a duty to the Debtor under the LOC to fund construction of the Project. Am. Compl. ¶ 61. The Debtor alleged that Creditor breached its duty by declining to pay the Precision Requisitions, without any basis. Am. Compl. ¶¶ 90, 96. The Debtor alleged that Creditor's failure to pay the Precision Requisitions caused the Debtor to lose the Project. Am. Compl. ¶ 100. The Amended Complaint also alleges that Creditor subverted the purpose of the LOC because the Debtor had over $3.8 million in available credit under the LOC and Creditor moved for summary judgment after the Debtor cured the only default under the LOC. Am. Compl. ¶¶ 101, 148, 152, 153.

Creditor contends it could not have breached the implied covenant of good faith and fair dealing because it "had the right to determine in its discretion whether or not to pay [the Precision Requisitions] based on the circumstances" and the right "to accelerate the loan upon default." Def.'s Reply Mem. in Supp of Mot. to Dismiss, Adv. Pro., ECF No. 12, at 7, 8. Creditor is correct that "[a]s a matter of law, enforcing a contract provision agreed to by both parties can not constitute a breach of good faith." *AM Cosmetics Inc. v. Solomon*, 67 F. Supp 2d 312, 324 (S.D.N.Y. 1999). However, Creditor does not provide a citation to the LOC that supports Creditor's contention that it had absolute discretion to refuse to fund the Precision Requisitions. The Court will not presume to know the sections of the documents to which

Creditor refers and cannot assume that Creditor had an unqualified right to refuse to pay the Precision Requisitions.

Further, interpreting the LOC to require the Debtor to pay fees, charges, and monthly interest where Creditor has no obligation to make advances would render the LOC illusory and depart from the generally accepted rule of contract interpretation that "[w]here the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton,* 87 N.Y.2d at 389; *see Vinci Brands LLC v. Coach Servs., Inc.*, No. 23 Civ. 5138, 2023 WL 4370841, at *7–*8 (S.D.N.Y. Oct. 2, 2024) (denying motion to dismiss claim for breach of the implied covenant of good faith and fair dealing even though defendant was exercising right afforded to defendant under the contract based on factual allegations that defendant intentionally prevented plaintiff from benefitting from the contract); *see also Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 302 (N.Y. App. Div. 2003) ("[W]here one has an apparently unlimited right under a contract, that right may not be exercised solely for personal gain in such a way as to deprive the other party of the fruits of the contract."); *TAP Holdings, LLC v. Orix Fin. Corp.*, 45 Misc. 3d 1217(A), 5 N.Y.S.3d 330 (N.Y. Sup. Ct. 2014) ("even where a party is granted 'complete discretion,' such discretion is not unfettered").  Assuming the LOC granted Creditor absolute discretion to fund or not fund the Precision Requisitions, that provision would not entitle Creditor to act arbitrarily.  If Creditor's refusal to fund was arbitrary, Debtor could have a claim for breach of the covenant of good faith and fair dealing.

Creditor argues the First Claim for Relief must be dismissed because the LOC matured on December 31, 2019, and Debtor failed to pay the loan in full as of the maturity date.  Def.'s Reply Mem. in Supp of Mot. to Dismiss, Adv. Pro., ECF No. 12, at 6.  The argument ignores that

the Debtor may have suffered damages resulting from the alleged premature termination of the LOC, which the Debtor alleges caused the Project to collapse.  Am. Compl. ¶ 100.  If proven, an award of damages in favor of Debtor could be set off against amounts owed by Debtor to Creditor under the LOC.

Creditor argues the First Claim for Relief must be dismissed because the Debtor admitted in its Amended Complaint in the Tort Action that Creditor was justified in calling a default because KOW and UMP delayed the progress of the Project.  Def.'s Reply Mem. in Supp of Mot. to Dismiss, Adv. Pro., ECF No. 12, at 9.  Debtor's admission is contained in a pleading that is not attached to the Amended Complaint, incorporated by reference or integral to the Amended Complaint.  Accordingly, the Court may not consider that evidence in determining the motion to dismiss without first converting the motion to dismiss to a motion for summary judgment.  *See United States ex rel. Foreman v. AECOM,* 19 F.4th 85, 108 (2d Cir. 2021).  Further, the admission is some evidence that Creditor's refusal to fund the Precision Requisitions was not actionable; however, the admission is not conclusive evidence because the admission reflects the Debtor's belief at the time it filed the Tort Action complaint.  The Debtor's current belief may be different.

Creditor cites two cases in support of its position that the Court is required to dismiss the First Claim for Relief as a matter of law because Creditor merely enforced its remedies as provided under the LOC.  Def.'s Reply Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 12, at 7-8.  In each of those cases, however, the borrower admitted it was in material default of the loan agreement entitling the lender to enforce its remedies.  In *U.S. Bank Nat'l Ass'n v. 160 Palisades Realty Partners LLC*, No. 20-cv-8089, 2022 WL 743928 (S.D.N.Y. Mar. 10, 2022), cited by Creditor, mortgagor offered to settle mortgagee's claims by giving mortgagee a deed in

lieu of foreclosure, conditioned upon a release of the guarantors. *Id*. at * 2. Mortgagee declined to release the guarantors and brought an action for the collection of rents. *Id*. at *1. Mortgagor counterclaimed, asserting a claim for breach of the covenant of good faith and fair dealing for rejecting mortgagor's offer to settle. *Id*. at *4–5. The court dismissed the counterclaim because mortgagor admitted it defaulted; therefore, mortgagee was entitled to enforce its remedies under the loan documents. *Id*. at *5. Similarly, in *Bank of Baroda v. Harsh Imps., Inc.*, No. 1:22-cv-2257-GHW, 2023 WL 2601613 (S.D.N.Y. Mar. 22, 2023), cited by Creditor, the Court dismissed the claim for breach of the covenant of good faith and fair dealing notwithstanding the lender terminated a credit facility because it no longer wanted to make small business loans because the borrower admitted it was in default by failing to make monthly interest payments. *Id.* at *3. Here, Debtor disputes that it was in default under the LOC. To the contrary, Debtor alleges that Creditor manufactured the default. Therefore, whether Creditor was entitled to enforce its remedies is a disputed question of fact.

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490 (S.D.N.Y. 2020), also cited by Creditor, is distinguishable. In that case, plaintiff asserted a claim for breach of the covenant of good faith and fair dealing based on defendant's failure to auction plaintiff's art. *Id*. at 498. Auctioneer defended by arguing that the contract excused auctioneer's performance. *Id*. at 506. The court agreed with auctioneer's interpretation of the contract and dismissed plaintiff's claims. *Id*. at 505, 508. Creditor has not identified any LOC provision that would excuse Creditor's obligation to fund the Precision Requisitions and require dismissal of Debtor's claim for relief.

Based on the foregoing, the Court holds that Debtor adequately pled a cause of action for breach of the implied covenant of good faith and fair dealing.

*iii. Creditor's Motion to Dismiss the Second Claim for Relief
(Equitable Subordination)*

Bankruptcy Code section 510(c) states in relevant part that the court may:

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510. Section 510(c) codifies the judicial doctrine of equitable subordination under which the bankruptcy court has the power to subordinate claims against the debtor's estate to claims it finds ethically superior under the circumstances. *See In re Lemco Gypsum, Inc.*, 911 F.2d 1553, 1556 (11th Cir. 1990). "The purpose of equitable subordination is to undo wrongdoing by an individual creditor in the interest of the other creditors." *Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.)*, 345 B.R. 56, 59 (S.D.N.Y. 2006).

### a. The Debtor Has Standing to Bring a Claim for Equitable Subordination.

Creditor argues the claim for equitable subordination must be dismissed because Debtor does not have standing to bring the claim. *See* Def.'s Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 8, at 11.

A case trustee has standing to seek equitable subordination of claims. *See Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC)*, 515 B.R. 117, 159 (Bankr. S.D.N.Y. 2014). An unsecured creditors' committee, if authorized by the bankruptcy court to pursue claims on behalf of the debtor's chapter 11 estate, may bring equitable subordination claims. *See In re AppliedTheory Corp.*, 493 F.3d 82, 87 (2d Cir. 2007); *see also In re Toy King Distribs., Inc.*, 256 B.R. 1, 194 (Bankr. M.D. Fla. 2000).

A creditor, however, may bring an equitable subordination claim only if the creditor can allege a particularized injury resulting from the defendant's inequitable conduct, which differs from the injury incurred by all creditors. *In re Bernard L. Madoff Inv. Secs. LLC*, 515 B.R. at 159; *In re Elrod Holdings Corp.*, 392 B.R. 110 (Bankr. D. Del. 2008).

Chapter 7, chapter 9, chapter 12, and chapter 13 debtors do not have standing to assert claims for equitable subordination. *See Riccitelli v. Sensenwich (In re Riccitelli)*, 14 Fed. App'x 57, 58 (2d Cir. 2001) (unpublished) (finding the chapter 13 debtor lacked standing to bring an equitable subordination claim); *Colvin v. Amegy Mortg. Co., LLC (In re Colvin)*, No. 11-51241-CAG, 2015 WL 128036, at *8 (Bankr. W.D. Tex. Jan. 8, 2015) (chapter 12 debtor); *Wilkinson v. EMC Mortg. (In re Wilkinson)*, No. 11-05056, 2012 WL 112945, at *7 (Bankr. W.D. Tex. Jan. 12, 2012) (chapter 7 debtor); *In re Cnty. of Orange*, 219 B.R. 543, 557 (Bankr. C.D. Cal. 1997) (chapter 9 debtor).

Most courts hold that chapter 11 debtors have standing to assert a claim for equitable subordination. *See e.g., In re Toy King Distribs.*, 256 B.R. at 194; *In re KDI Holdings, Inc.*, 277 B.R. 493 (Bankr. S.D.N.Y. 1999); *In re Audre, Inc.*, 210 B.R. 360 (Bankr. S.D. Cal. 1997); *Matter of Century Glove, Inc.*, 151 B.R. 327 (Bankr. D. Del. 1993*); In re Bunker Exploration Co.*, 42 B.R. 297 (Bankr. W.D. Okla. 1984). Those cases reason that a chapter 11 debtor has standing to seek equitable subordination because, under Bankruptcy Code section 1107, a chapter 11 debtor and debtor in possession has all the rights and powers of a trustee. *See e.g., In re Reagor-Dykes Motors, LP, et al.*, No. 18-50214-RLJ-11, 2020 WL 4939180, at *12 (Bankr. N.D. Tex. Aug. 24, 2020) (collecting cases).

*Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs.*, 181 B.R. 781, 791 (D.N.J. 1995), cited by Creditor, held that a chapter 11 debtor in possession lacked standing to seek equitable subordination, however, the court provided no analysis for its holding.  *Id.*

*In re Weeks*, 28 B.R. 958, 960 (Bankr. W.D. Okla. 1983), cited by Creditor, also holds that a chapter 11 debtor in possession lacks standing to assert a claim for equitable subordination, reasoning that:

> The fundamental aim of equitable subordination is "to undo or offset any inequality in the claimed position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." Id. at 1177 (emphasis added). Thus, the proper party to seek equitable subordination is the creditor or the trustee acting as representative of the creditor, not the debtor. In re Lockwood, 14 B.R. 374 (Bkrtcy.E.D.New York 1981). The debtors have no standing to raise the doctrine.

*Id.*  *Weeks*, however, ignores Bankruptcy Code section 1107, which grants the chapter 11 debtor in possession "all the rights . . . and powers . . . of a trustee serving in a case under this chapter." 11 U.S.C. § 1107.  Further, *Weeks* relies on *In re Lockwood,* 14 B.R. 374 (Bankr. E.D.N.Y. 1981)*,* but *Lockwood* was a chapter 7 case, and the *Lockwood* court did not discuss whether a chapter 11 debtor in possession had standing to bring an equitable subordination claim.

Creditor cites to *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 379 B.R. 425 (S.D.N.Y. 2007) in support of its proposition that the Debtor lacks standing to bring an action for equitable subordinate because the court in Enron stated that "[e]quitable subordination is a remedy that belongs to the creditors—not the debtor." *Id*. at 441.  The quote is dicta.  In *Enron*, the reorganized chapter 11 debtor brought an action to equitably subordinate a claim that had been assigned by the creditor to an unrelated third party.  *Id.* at 427.  The Court dismissed the cause of action holding that equitable subordination can be asserted only against the party that committed the inequitable conduct, not the purchaser of the claim.  *Id.* at 442.  The *Enron* court

was not asked to and did not address whether a chapter 11 debtor in possession had standing to assert a claim for equitable subordination.

The remaining cases cited by Creditor in support of its argument that the Debtor lacks standing to bring a claim for equitable subordination are inapposite because they address equitable subordination claims brought by chapter 7, chapter 12, or chapter 13 debtors as opposed to chapter 11 debtors in possession. *See In re Riccitelli*, 14 Fed. App'x at 58 (chapter 13); *In re Colvin*, No. 11-51241-CAG, 2015 WL 128036, at *8 (Bankr. W.D. Tex. Jan. 8, 2015) (chapter 12 debtor); *Blumenberg v. Yihye (In re Blumenberg)*, 263 B.R. 704, 717 (Bankr. E.D.N.Y. 2001) (chapter 7 debtor).

Holding that a chapter 11 debtor has standing to seek equitable subordination is consistent with the plain language of Bankruptcy Code section 1107, which grants a debtor and debtor in possession the powers of a case trustee. Additionally, permitting a debtor in possession to seek equitable subordination is consistent with Bankruptcy Code policy. There is no trustee or creditors' committee in most chapter 11 cases, and an individual creditor typically cannot show a particularized injury resulting from another creditor's inequitable conduct. Unless the chapter 11 debtor has standing to equitably subordinate claims, no party in interest would have standing to equitably subordinate the claim of a creditor that engaged in wrongdoing to the detriment of the creditor body as a whole.

b. The Amended Complaint Adequately Pleads a Claim for Equitable Subordination.

To equitably subordinate a claim under Bankruptcy Code section 510(c)(1), (i) the claimant must have engaged in some type of inequitable conduct, (ii) the misconduct must have resulted in injury to creditors or conferred an unfair advantage on the claimant, and (iii) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.

*Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699 (5th Cir. 1977); *Comstock v. Grp. of Institutional Invs.*, 335 U.S. 211, 229 (1948); *Luther v. United States*, 225 F.2d 495, 499 (10th Cir. 1955).  When Congress passed the current Bankruptcy Code in 1978, it expressly authorized equitable subordination.  The Bankr. Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, 2586.  Therefore, any exercise of authority under Bankruptcy Code section 510(c)(1) is not inconsistent with the Code unless it ignores the Code's language.  *Bala v. Kaler (In re Racing Servs., Inc.)*, 340 B.R. 73, 78 (B.A.P. 8th Cir. 2006).

"Traditionally, equitable subordination was inapplicable to ordinary creditors (as opposed to insiders), but it is now well-settled that the doctrine applies to general creditors or 'non-insiders,' though the circumstances warranting equitable subordination of a non-insider's claim arise less frequently because the opportunities for abuses triggering equitable subordination tend to be more readily available to insiders*." LightSquared LP v. SP Special Opportunities LLC (In re LightSquared Inc.)*, 511 B.R. 253, 348 (Bankr. S.D.N.Y. 2014); *see Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 564 (Bankr. S.D.N.Y. 2002) (noting the "[t]est for equitable subordination is applicable whether the claim to be subordinated is that of an insider or a non-insider."); *see also 80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 838 (Bankr. S.D.N.Y. 1994) ("The doctrine is also applicable to general creditors, but identifying the degree of conduct that will justify its invocation has proven even more 'slippery' and unpredictable.").

Creditor argues that to assert an equitable subordination claim "the complaint must allege more than improper conduct but must allege conduct that is 'truly extreme,' 'egregious,' or of 'such moral turpitude that it would amount to criminal activity.'"  Def.'s Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 8, at 13.  In support of its contention, Creditor cites *Bridges v.*

36

*Purdue Pharma L.P. (In re Purdue Pharma L.P.)*, 724 F. Supp. 3d 260 (S.D.N.Y. 2024).  In

*Bridges*, the United States filed a proof of claim, asserting over $10 billion in claims, against

Purdue Pharma L.P.  *Id.* at 263.  The bankruptcy court approved a settlement between the United

States and Purdue that reduced and allowed the claim.  *Id.* at 264.  Two individual creditors

commenced an adversary proceeding seeking to equitably subordinate the United States' claim to

the plaintiffs' claims and the claims of all other personal injury creditors.  *Id.*  The district court

affirmed the bankruptcy court's order dismissing the complaint.  *Id.*  at 263.  The District Court

articulated the legal standard for equitable subordination as follows:

> A plaintiff seeking to subordinate the claims of a noninsider must allege
> "egregious, improper, or wrongful conduct that damages creditors." [*In re
> Aéropostale, Inc.*, 555 B.R. 369, 410 (Bankr. S.D.N.Y. 2016)]. The requisite
> conduct must be truly extreme: conduct that is "tantamount to fraud,
> misrepresentation, overreaching [or] spoliation," *id.*, and that involves "moral
> turpitude," "illegality or some other breach of a legally recognized duty," *80
> Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Associates)*, 169
> B.R. 832, 838-39 (Bankr. S.D.N.Y. 1994) (collecting cases).

*Id* at 267.  That standard is the correct standard if the creditor whose claim is to be subordinated

owes no legally recognized duties to the debtor or its creditors.  The standard is different if the

creditor owes a fiduciary, contractual, or other duty to the debtor or its creditors.

The court in *In re 80 Nassau Associates*, relied on by the *Bridges* court, recognized the

distinction stating:

> In the struggle to identify the precise type of conduct that will support the
> equitable subordination of a non-insider's claim, courts have groped for an
> appropriate definition of a heightened standard of wrongdoing. The majority
> require conduct that is "gross and egregious." This includes "substantial
> misconduct tantamount to fraud, misrepresentation, overreaching or spoliation, or
> conduct involving moral turpitude."
>
> [T]hose cases that heighten the standard and find that a non-insider/non-fiduciary
> acted inequitably, base their decisions on conduct which violates a generally
> recognized duty that exists outside of bankruptcy law. . . .

> Hence, the standard of inequitable conduct that justifies subordination of a non-insider/non-fiduciary's claim can be summarized in the following manner: unless the creditor has dominated or controlled the debtor to gain an unfair advantage, his claim will be subordinated, based upon inequitable conduct, only if the claimant has committed some breach of an existing, legally recognized duty arising under contract, tort or other area of law. In commercial cases, the proponent must demonstrate a substantial breach of contract and advantage-taking by the creditor. In the absence of a contractual breach, the proponent must demonstrate fraud, misrepresentation, estoppel or similar conduct that justifies the intervention of equity.

*Id.* at 838–40 (internal citations omitted); *see S.E.C. v. Spongetech Delivery Sys., Inc.*, 98 F. Supp. 3d 530, 553 (E.D.N.Y. 2015) (acknowledging that courts hold inequitable conduct to encompass lawful conduct that is contrary to equity and good conscience); *In re 9281 Shore Rd. Owners Corp. v. Seminole Realty Corp. (In re 9281 Shore Rd. Owners Corp.)*, 187 B.R. 837, 853 (E.D.N.Y. 1995) (inequitable conduct includes gross misconduct amounting to overreaching); *see also Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. (In re Hydrogen, L.L.C.*), 431 B.R. 337, 361 (Bankr. S.D.N.Y. 2010) (inequitable conduct includes enrichment brought about by unconscionable, unjust, or unfair conduct, or double-dealing).

Unlike the creditor in *Bridges*, Creditor owed contractual duties to the Debtor under the LOC.  Debtor alleged a substantial breach of contract and advantage-taking by alleging that Creditor improperly failed to advance funds, manufactured a breach, and proceeded with the Creditor Collection Action, notwithstanding the breach being cured.  Am. Compl. ¶¶ 20, 96, 116, 153.  Further, a violation of the implied covenant of good faith and fair dealing may be grounds for equitable subordination.  *In re LightSquared Inc.*, 511 B.R. at 345–46; *see Official Comm. of Unsecured Creditors of Lois/USA, Inc. v Conseco Fin. Servicing Corp. (In re Lois/USA, Inc.)*, 264 B.R. 67, 136, n. 167 (if proven, a violation of the implied covenant of good faith and fair dealing could support subordination).  As set forth above, Debtor's claim for breach of the implied covenant of good faith and fair dealing is sufficiently pled.  Accordingly, assuming

all factual allegations are true, as this Court must do on a motion to dismiss, the Amended Complaint alleges a cause of action for equitable subordination.

Creditor also argues the claim for equitable subordination must be dismissed because the Debtor has not alleged damages.  The Debtor has alleged damages.  *See* Am. Compl. ¶¶ 193, 194.  The extent of the damage and the appropriate remedy are not issues that can be decided at the pleading stage.  *In re Ticketplanet.com*, 313 B.R. 46, 66 (Bankr. S.D.N.Y. 2004).

Based on the foregoing, the Court holds that the Amended Complaint adequately pleads a claim for equitable subordination.

### iv. *Creditor's Motion to Dismiss the Third Claim for Relief (Amended Objection to Claim)*

Creditor argues it is "procedurally improper" for the Debtor to have included an amended objection to the POC in the Amended Complaint.  Def.'s Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 8, at 16.  Rule 3007(b) of the Federal Rules of Bankruptcy Procedure states that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim but may include the objection in an adversary proceeding."  Fed. R. Bankr. P. 3007(b).  Accordingly, Debtor's inclusion of the amended objection to the POC in the Amended Complaint is procedurally proper.

Creditor also argues the Third Claim for Relief should be dismissed because it is seeking to disallow the POC based on Creditor's bad acts and equitable disallowance of a claim is not permitted by the Bankruptcy Code.  Def.'s Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 8, at 16.

The Amended Complaint alleges:

- Creditor failed to pay the Precision Requisitions, resulting in the Precision Mechanics Lien against the Project in the amount of $483,951.04.  Am. Compl. ¶ 90-91.

- "As a result of the fabricated Precision default, beginning in or about April 2019, Creditor started charging the Debtor default interest on the LOC at a rate of 27.75% (the "Default Interest")." Am. Compl. ¶ 116.

- "The accrual of 27.75% interest, late fees, and attorneys' fees based on the Precision Mechanics Lien default was the result of Creditor's own bad acts and should not be treated as a valid claim against the Debtor."  Am. Compl. ¶ 212.

- "Aside from the principal advanced to the Debtor in the total amount of $4,181,787 (MM) [sic], Creditor is not entitled to anything further, and must return to the Debtor's estate all sums in [sic] received in excess thereof."  Am. Compl. ¶ 214.

Accepting all allegations as true and drawing all reasonable inferences in favor of Debtor, the allegations support Debtor's claim to reduce the POC.  Defendant's belief that the cause of action looks like a claim for equitable disallowance is not grounds to dismiss Plaintiff's amended objection to the POC.

*v. Creditor's Motion to Dismiss Claim for Punitive Damages*

Creditor seeks to dismiss Debtor's claim for punitive damages arguing that Debtor waived its rights to punitive damages, and punitive damages are not available as a matter of law for breach of contract claims.  Def.'s Mem. in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 8, at 25–27.

Creditor claims punitive damages are waived based on section 10 of each promissory note comprising the LOC, which sections state in relevant part:

> IN NO EVENT SHALL LENDER, ITS SUCCESSORS, ASSIGNS OR PARTICIPANTS BE LIABLE FOR SPECIFIC PERFORMANCE, ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES WHATSOEVER (INCLUDING WITHOUT LIMITATION LOSS OF BUSINESS PROFITS OR OPPORTUNITY) AND BY ITS EXECUTION HEREOF, BORROWER WAIVES ANY RIGHT TO CLAIM OR SEEK ANY SUCH DAMAGES.

*Id.* at 27.  Generally, a contract clause that limits liability is enforceable if negotiated at arm's length by sophisticated parties, provides for more than nominal damages, and does not wholly exculpate the breaching party.  *Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 355 (2020).  However, a finding of willful or intentional wrongdoing may void a contractual limitation of liability.  *See Sanmina Corp. v. Dialight plc*, No. 19 Civ. 11710, 2023 WL 9022882, at n.8 (S.D.N.Y. Dec. 29, 2023) (citing *Spoleto Corp. v. Ethiopian Airlines Grp.*, No. 21 Civ. 5407, 2022 WL 329265, at *8 n.3 (S.D.N.Y. Feb. 3, 2022).  Here, Debtor alleges intentional wrongdoing.  *See e.g.*, Am. Compl. ¶¶ 90-100, 143-52.  Therefore, the waiver does not obviate Debtor's request for punitive damages as a matter of law.

Plaintiff's contention that punitive damages are never available for breach of contract claims is incorrect.  In *N. Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315–16 (1995), the Court of Appeals of New York set forth the requirements for recovering punitive damages for breach of contract claims, stating:

> In *Rocanova* . . . [this court] reiterated the principle that damages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong, but that punitive damages may be recoverable if necessary to vindicate a public right. Punitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as "gross" and "morally reprehensible," and of "'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" We set forth in the decision the pleading elements required to state a claim for punitive damages as an additional and

exemplary remedy when the claim arises from a breach of contract. They are: (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature [as *Walker*] set forth; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally.

*Id.* at 315–16 (citations omitted); *see Rocanova v. Equit. Life Assur. Socy.*, 83 N.Y.2d 603, 613 (1994); *see Walker v. Sheldon*, 10 N.Y.2d 401, 404–05 (1961).  Debtor does not allege that Creditor's conduct would be actionable as an independent tort.  Indeed, Debtor has agreed to voluntarily dismiss its claims for misrepresentation and fraud on the court.  Further, Debtor does not allege that Creditor's conduct is part of a pattern directed at the public generally.  Therefore, Plaintiff had not adequately pled that it would be entitled to punitive damages based on Defendant's breach of the covenant of good faith and fair dealing.   Plaintiff's first claim for relief is dismissed, solely to the extent Plaintiff seeks punitive damages.

> *vi. Creditor's Motion to Dismiss the Fourth Claim for Relief (Misrepresentation) and the Fifth Claim for Relief (Fraud on the Court)*

Debtor has voluntarily dismissed the Fourth Claim for Relief.  Debtor has agreed to dismissal of the Fifth Claims for Relief, without prejudice to its right to later assert a claim for fraud on the court in the Creditor Collection Action.  Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss, Adv. Pro., ECF No. 10, at 1.

## CONCLUSION

For the reasons set forth above:

1.  Creditor's motion for mandatory or permissive abstention is denied.

2.  Creditor's motion to dismiss the First Claim for Relief (Breach of the Implied Covenant of Good Faith and Fair Dealing) is granted solely to the extent that the Debtor seeks to recover punitive damages.

3. Creditor's motion to dismiss the Second Claim for Relief (Equitable Subordination) is denied.

4. Creditor's motion to dismiss the Third Claim for Relief (Amended Objection to Claim) is denied.

5. Creditor's motion to dismiss the Fourth Claim for Relief (Misrepresentation) is granted and the claim is dismissed with prejudice.

6. Creditor's motion to dismiss the Fifth Claim for Relief (Fraud on the Court) is granted and the claim is dismissed, without prejudice to the Debtor asserting such claim in the Creditor Collection Action.

**SO ORDERED:**



Dated: January 14, 2025
       Brooklyn, New York

**Jil Mazer-Marino**
**United States Bankruptcy Judge**